UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DAVIS,<br>    *Plaintiff*,<br>    *v.*<br>HUNT LEIBERT JACOBSON, P.C. and WELLS<br>FARGO BANK, N.A.,<br>    *Defendants*.[1] | Civil No. 3:12cv1102 (JBA)<br><br>November 7, 2014 |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff James Davis, an active duty service member in the Navy, filed suit against the law firm Hunt Leibert Jacobson, P.C. ("Hunt Leibert") and Wells Fargo Bank, N.A. ("Wells Fargo") for claims arising from foreclosure proceedings initiated against him.[2] Defendants move [Doc. ## 19, 20] to dismiss Plaintiff's Amended Complaint [Doc. # 18] in its entirety, arguing that Plaintiff fails to state a claim for relief.[3] For the reasons that

---

[1] The Amended Complaint misspells Hunt Leibert as "Hunt Liebert." The Clerk is requested to amend the caption to reflect the correct spelling.

[2] The Amended Complaint asserts violations of the Servicemembers' Civil Relief Act ("SCRA"), 50 App. U.S.C. § 501 *et seq.* (Count One); the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a) *et seq.* (Count Two); Connecticut's Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-646 (Count Three); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d (Count Four; against Hunt Leibert only); Negligent Infliction of Emotional Distress ("NIED") (Count Five); and Breach of the Covenant of Good Faith and Fair Dealing (Count Six).

[3] After oral argument on Defendants' motions, the case was administratively closed [Doc. # 29] at the parties' request so that they could pursue mediation. The parties were unable to resolve this matter and jointly moved [Doc. # 38] to restore this case and the pending motions to the active docket.

follow, Hunt Leibert's motion is denied in part and granted in part and Wells Fargo's motion is denied in its entirety.

## I.     Factual Allegations

The Amended Complaint alleges that Plaintiff was at all times relevant to this matter an active member of the United States Navy. (Am. Compl. ¶¶ 1–2.) On April 13, 2006, Plaintiff executed and delivered a Promissory Note and Mortgage in favor of CTX Mortgage Company, LLC, in the original principal amount of $288,552 for his family residence, located in Plainfield, Connecticut. (*See id.* ¶ 12; *see also* Ex. B to Wells Fargo's Mem. Supp. [Doc. # 21].)   The Note and Mortgage were assigned to Defendant Wells Fargo. (Am. Compl. ¶ 13.)

In March 2009, Wells Fargo retained Hunt Leibert to commence a foreclosure action against Plaintiff in Superior Court for the Judicial District of Windham at Putnam. (*Id.* ¶ 17; *see also* Civil No. WWB-CV09-5004294 S.) In August 2009, "Plaintiff and Defendant [Wells Fargo], in anticipation of Plaintiff's foreign deployment, negotiated a modification agreement." (Am. Compl. ¶ 18.)   Plaintiff was deployed on active duty in October 2009, and in accordance with the modification agreement, made monthly payments to Wells Fargo in October, November, and December of 2009. (*Id.* ¶ 20.)   In January 2010, "without further notice to Plaintiff, Defendant [Wells Fargo] rejected the modification and refused tender of any further amounts." (*Id.* ¶ 21.)   The foreclosure action was dismissed by the Connecticut Superior Court on May 10, 2010 for an unspecified reason. (*Id.* ¶ 22.)

At all times after May 10, 2010, Plaintiff was deployed away from his home port, and at some points was outside of the United States, the whole time "believing that the

Foreclosure was ended by his agreement with" Wells Fargo.  (*Id.* ¶ 23.)  However, on June 17, 2010, Defendants "moved to open the dismissal" of the foreclosure action and also moved for summary judgment.  (*Id.* ¶ 24.)  The Superior Court granted those motions "by default." (*See id.*; *see also* Foreclosure Action Docket, Ex. A to Wells Fargo's Mem. Supp. at Doc. ## 114, 116.) Plaintiff "failed to appear to contest these proceedings" because he was deployed "and unavailable resulting in actual lack of notice of any of the proceedings."  (Am. Compl. ¶ 25.)

On July 13, 2010, Defendants applied for a judgment of strict foreclosure of Plaintiff's home, which was granted by the Superior Court on account of Plaintiff's "default."  (*Id.* ¶¶ 26–27.)   The first law day of strict foreclosure was scheduled for September 16, 2010.  (*Id.* ¶ 28.)  Plaintiff alleges that on July 26, 2010, Defendants "or their agents" contacted Plaintiff's family and "demanded that they voluntarily vacate the Home in conformance with the judgment or face forcible ejectment," and not later than September 3, 2010. (*Id.* ¶¶ 29–30.)  Plaintiff's wife and his five minor children vacated the home and moved to another state. (*Id.* ¶ 31.)

Plaintiff alleges that in September, October, and November 2010 Wells Fargo exercised "possession, ownership and control" of the home by "mowing the lawn, winterizing the house, and performing other maintenance chores." (*Id.* ¶ 33.) In November 2010, Defendants notified the Superior Court that Plaintiff was on active duty and requested that the judgment be opened "to comply with its internal requirements," which the Superior Court granted.  (*Id.* ¶¶ 35–36.)  Defendants took no other formal action in furtherance of the foreclosure action after this, and the foreclosure was dismissed on January 18, 2011. (*Id.* ¶¶ 38–39.)

3

After that point, Plaintiff and his family received notice from the Superior Court that the foreclosure action was dismissed, and as a result "Plaintiff questioned and researched the status of the Home and learned for the first time that the Foreclosure was never completed and that he still owned the Home." (*Id.* ¶ 40.) Plaintiff traveled from Maine to Connecticut to inspect his home, and learned that "all efforts to protect and maintain the Home had been abandoned by [Wells Fargo] and the Home has been substantially vandalized and damaged to render the Home now unfit for occupancy." (*Id.* ¶ 42.)

## I.    Discussion[4]

### A.    Servicemembers' Civil Relief Act (Count One)

The SCRA, which in 2003 amended, "restated and strengthened" the Soldiers' and Sailors' Civil Relief Act ("SSCRA"), is intended to provide servicemembers with broad protections from default judgments being entered where they may not be aware that there is an action pending against them or they are unable to defend against an action due to military service. *In re Templehoff*, 339 B.R. 49, 53 (S.D.N.Y. Br. 2005) ("Our country's servicemembers must have peace of mind that they will not be subject to civil actions which they cannot appear and defend."); *see also United States v. Kaufman*, 453 F.2d 306, 309 (2d Cir. 1971) ("The purpose of the [SSCRA] is to prevent default judgments from

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

being entered against members of the armed services in circumstances where they might be unable to appear and defend themselves.").[5]

Section 521 of the SCRA is titled "Protection of servicemembers against default judgments" and is applicable "to any civil action or proceeding . . . in which the defendant [active duty servicemember] does not make an appearance."  50 App. U.S.C. § 521(a). Under this provision, "the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit" stating whether or not the defendant is in military service.  *Id.* § 521(b)(1).  If the defendant is in military service, "the court may not enter a judgment until after the court appoints an attorney to represent the defendant," *id.* § 521(b)(2), and can stay the proceedings until the defendant-servicemember is located, *id.* § 521(d).[6]

After the servicemember "has received notice of the action or proceeding," § 522 rather than § 521 applies and "provides that a court may, on its own motion, and must at the servicemember's request, stay any proceeding in which a servicemember is a party,

---

[5] The SCRA and SSCRA are essentially identical: the provisions remained the same after the 2003 enactment, although some definitions were "reorganized."  *Cronin v. United States*, 98 Fed. Cl. 268, 270 n.2 (2011) ("The SSCRA was amended and renamed in 2003. The effect of its provisions remained the same, although some definitions were reorganized.").

[6] If default judgment is entered against a servicemember on military service, "the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action" if he or she was "materially affected by reason of that military service in making a defense to the action" and "has a meritorious or legal defense to the action or some part of it."  *Id.* § 521(g).

under certain conditions." *Turner v. A. Passmore & Sons Inc.*, 341 F. App'x 363, 370 (10th Cir. 2009).[7]

Defendants contend that § 521 applies only to default judgments and thus does not apply because Plaintiff "made an appearance" as a defendant and "participated in court sponsored foreclosure mediation" prior to his deployment.  (Wells Fargo Reply [Doc. # 26] at 1.)  As Plaintiff acknowledges, under Connecticut state-court practice the May 2010 dismissal was subject to being reopened within four months for good cause, *see* Conn. Practice Book § 17-43, but he contends that because the foreclosure case was reopened without notice to him while he was deployed and judgment was entered against him without his opposition, the judgment was functionally a "default" under § 521.

Although Defendants are correct that Plaintiff made an "appearance" in the case, the Court concludes that the SCRA should not be read as narrowly as they contend.  As the Supreme Court indicated in reference to the SSCRA, "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Maistre v. Leffers*, 333 U.S. 1, 6 (1948).  To interpret the statute as Defendants argue would frustrate the purposes of the SCRA, i.e.:

> (1) to provide for, strengthen, and expedite the national defense through protection extended by this Act . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and (2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 App. U.S.C. § 502.

---

[7] At oral argument, Plaintiff clarified that he alleges a violation of § 521 only.  (*See* Oral Argument Tr. [Doc. # 43] at 3, 5.)

The purpose of the SCRA is to prevent judgments from being entered against members of the armed services without their knowledge where they cannot appear and defend themselves. *See Kaufman*, 453 F.2d at 309; *see also In re Realty Associates Sec. Corp.*, 53 F. Supp. 1015, 1016 (E.D.N.Y. 1944) ("Congress intended to protect any persons in the military service against any personal liability where such person had no opportunity to appear in the action either in person or through personal counsel, and that where the failure of a person to make such appearance is due to the fact that he is in the military service, his civil rights shall not be prejudiced."). Section 521 generally applies only when a defendant "does not make an appearance" because "[o]nce a defendant knows of the pendency of an action, the purpose of [§ 521] is satisfied," *Chenausky v. Chenausky*, 128 N.H. 116, 118 (1986), and absent servicemembers can instead seek a stay of proceedings under § 522 for the duration of their deployment.

However, this is not a situation where Plaintiff could have availed himself of the protections of § 522 after he made an appearance. Rather, the Amended Complaint alleges that Mr. Davis was deployed believing that his case had been dismissed and thus he had no reason to believe that he needed to request a stay of the proceedings. Under Defendants' interpretation of the SCRA, Plaintiff would be left protected by neither § 521 nor § 522. However, the scenario alleged is one which § 521 was intended to prevent—a civil judgment being entered against a servicemember without notice to him or her or the opportunity to defend. Plaintiff's earlier "appearance" in the action was before its dismissal and reopening the action without notice to him did not provide him with an opportunity to defend against this judgment.

7

The situation alleged in the Amended Complaint is analogous to one in which Defendants filed against Plaintiff a new foreclosure action, of which he had no knowledge and was unable to defend having been deployed.  Although Plaintiff filed a pro se appearance in the initial foreclosure action in 2009, the allegations of the Amended Complaint state, and the Superior Court's docket reflects, that that foreclosure action had been dismissed in May 2010, which Plaintiff alleges was in accordance with the parties' settlement/mediation agreement. However, once Plaintiff was deployed overseas, Defendants moved to reopen the case and moved for strict foreclosure without notice to him, which is the equivalent of a default judgment being entered against him in violation of the SCRA.[8]  Accordingly, Defendants' motion to dismiss Plaintiff's SCRA claim under § 521 is denied.

---

[8] Because Plaintiff made an appearance in the Superior Court action, default judgment was not entered against him, *see* Conn. Practice Book § 17-20 ("[I]f no appearance has been entered for any party to any action . . . any other party to the action may make a motion that a nonsuit or default be entered for failure to appear."), however, the Amended Complaint plausibly alleges that judgment was entered against him "by default" because he failed to respond to Wells Fargo's motion to reopen the case and for summary judgment, *see* Conn. Practice Book § 17-19 ("If a party fails to comply with an order of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority."); *see also Auto. Twins, Inc. v. Klein*, 138 Conn. 28, 33 (1951) ("[T]here is a clear distinction between a default, sometimes loosely referred to as a judgment of default, and a judgment upon default.  A default is not a judgment. It is an order of the court the effect of which is to preclude the defendant from making any further defense in the case so far as liability is concerned.  A judgment upon default, on the other hand, is the final judgment in the case which is entered after the default and after a hearing in damages.").

**B.      Connecticut Unfair Trade Practices Act (Count Two)**

Next, Plaintiff asserts a violation of CUTPA, alleging that "[t]he acts and trade practices of Defendants, and each of them, are unscrupulous, unfair and deceptive." (Am. Compl. ¶ 48.) Defendants contend that the CUTPA claims against them must be dismissed, because the claims are based exclusively on actions taken as part of the foreclosure action before the Superior Court and thus are barred by the litigation privilege and otherwise fail to state a claim.

There are three criteria for determining whether an act or practice is "unfair" within the meaning of CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors, or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 154–55 (2005).

The CUTPA count of the Amended Complaint while not specifically alleging which of Defendants' actions are claimed to be unscrupulous or deceptive, incorporates by reference the general allegations of the Amended Complaint.  As confirmed at oral argument (Tr. at 42–43), the allegations relevant to the CUTPA count are that Defendants led Mr. Davis to believe that the foreclosure action against him had been dismissed, and once he was deployed, Defendants refused mortgage payments made

9

pursuant to the negotiated agreement and reopened the foreclosure action, continuing anew the foreclosure on his home and forcing his wife and children to leave the premises under threat of ejectment before Wells Fargo had the legal right to seek ejectment (*see* Am. Compl. ¶¶ 23–31).

Both Defendants contend that Plaintiff's CUTPA claims are barred by the litigation privilege. "[A]lthough all lawyers are subject to CUTPA, most of the practice of law is not" for public policy reasons, *Suffield Dev. Associates Ltd. P'ship v. Nat'l Loan Investors, L.P.*, 260 Conn. 766, 782 (2002), i.e., that "[i]mposing liability under CUTPA on attorneys for their representation of a party opponent in litigation would not comport with a lawyer's duty of undivided loyalty to his or her client," *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 729 (1993).  In *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012), the Second Circuit held that the litigation privilege barred CUTPA claims against a law firm related to its conduct during the course of a state foreclosure action, concluding that the "alleged misconduct, consisting of the filing of court documents, was performed as part of its legal representation of Deutsche Bank in the state debt collection action, and did not consist of entrepreneurial work such as advertising and bill collection" and thus "is immune from liability under the CUTPA."

The litigation privilege can also apply, in certain circumstances, to a party's communications for the purposes of preparing for trial or a hearing.  *See Kelley v. Bonney*, 221 Conn. 549, 573–74 (1992) ("It is uncontradicted that Bonney's discussion with Waller was conducted for the purpose of marshaling evidence against the plaintiff to be used to support the complaint" and thus "given the particular factual circumstances of Bonney's communications," they were "absolutely privileged.").

10

The allegations in the pleadings of the complaint at hand stand apart from conduct protected by the litigation privilege. Plaintiff's claims do not arise simply from Defendants' litigation conduct and statements but rather more broadly allege that Defendants engaged in "unethical, unscrupulous, willful or reckless" behavior by leading Plaintiff to believe that the foreclosure action against him had been dismissed, and once he was deployed and unable to respond, reopening the action and beginning to foreclose on his home, and threatening his wife and children with ejectment even though foreclosure had not been completed. (*See* Am. Comp. ¶ 21.) Such conduct was not in furtherance of litigation and thus is not protected by the litigation privilege. *See Pellechia v. OneWest Bank, FSB*, 3:11-CV-1587 (JCH), Ruling on Motion to Dismiss [Doc. # 91] at 18 (D. Conn. Aug. 24, 2012) ("[T]o the extent that [Plaintiff's] CUTPA claims are based not on [Defendants'] statements during the Foreclosure Action but instead on violation of the FDCPA itself, the litigation privilege might not directly apply.").

In fact, "[t]he Supreme Court has made it clear that the FDCPA applies to attorneys 'regularly' engaging in debt collection activity, including such activity in the nature of litigation." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004) (citing *Heintz v. Jenkins,* 514 U.S. 291, 299 (1995)). Thus, because the CUTPA claims relate to Hunt Leibert's alleged wrongful debt collection activity apart from its representation in the foreclosure proceedings, the litigation privilege does not bar this claim. Likewise Wells Fargo's alleged conduct was not in furtherance of its lawsuit against Plaintiff but rather was broader business conduct subject to CUTPA.

11

Wells Fargo next contends that Plaintiff has alleged only a simple breach of contract that is not covered by CUTPA.  (*See* Wells Fargo Mem. Supp. at 15.)  While "not every contractual breach rises to the level of a CUTPA violation," *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 228 (2010) (internal quotation marks), conduct that breaches a contract can form the basis for a CUTPA claim where it is "unethical, unscrupulous, willful or reckless," which is "is a question of fact for the trier," *IN Energy Solutions, Inc. v. Realgy, LLC*, 114 Conn. App. 262, 275 (2009).  The Appellate Court of Connecticut recently addressed the issue of whether a mortgagor could assert a counterclaim against a mortgagee bank in a foreclosure action alleging that the bank's "pursuit of the remedy of foreclosure in contravention of the terms of the parties' forbearance agreement" constituted both a breach of contract and CUTPA violation. *CitiMortgage, Inc. v. Rey*, 150 Conn. App. 595, 599 (2014).  Although the issue before the court was only whether this claim could be asserted as a counterclaim in the foreclosure action or needed to be separately pursued, the court appeared to recognize that the conduct alleged in the counterclaim was actionable:

> [T]here are reasons well grounded in public policy and consistent with the equitable nature of foreclosure, to find that a mortgagee who enters into a forbearance agreement during foreclosure litigation with a qualified residential borrower should not be permitted to pursue the remedy of foreclosure when the borrower has fully complied with its terms. Accordingly, a lender who wrongfully pursues the remedy of foreclosure in violation of the terms of a foreclosure forbearance agreement it has negotiated in the midst of litigation may be liable for any harm it causes to a borrower for its failure to forbear as promised.  If there is no potential for consequences to a lender who determines, unilaterally, to violate the terms of a forbearance agreement reached through the aegis of the court-mandated foreclosure forbearance mediation program, the program itself may sink into irrelevance and ultimate disuse.  Surely the General

Assembly did not envision such an outcome in the creation of the foreclosure forbearance mediation program.

*Id.* at 609–10.

Thus, Plaintiffs have plausibly alleged that Wells Fargo's conduct in wrongfully pursuing the remedy of foreclosure in breach of the parties' forbearance agreement constitutes "unethical, oppressive, or unscrupulous" behavior under CUTPA and Defendants' motion to dismiss this count is denied.

### C.   Connecticut's Creditors' Collection Practices Act (Count Three)

Count Three alleges violations of Connecticut's Creditors' Collection Practices Act, Conn. Gen. Stat. § 36a-646, which prohibits a creditor from using "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt," and its implementing regulations, 36a-647-5, and -6 of the Regulations of the State of Connecticut.  "The CCPA provides a private cause of action with potential remedies of 'actual damages,' 'additional damages as the court may award, not to exceed one thousand dollars,' and the costs and attorneys fee of a successful action."  *Larobina v. Wells Fargo Bank, N.A.*, No. 3:10CV1279 (MRK), 2012 WL 1032953, at *10 (D. Conn. Mar. 27, 2012) (quoting Conn. Gen. Stat. § 36a–648)).

Like the CUTPA claim in Count Two, Count Three does not point to any specific conduct that violated the statute but rather incorporates by reference the general allegations of the complaint that Defendants misled Mr. Davis to believe that the foreclosure action against him had been terminated and then attempted to foreclose his home and eject his family after his deployment.  (*See* Am. Compl. ¶¶ 23–31.)  Among the conduct proscribed by implementing regulations to the CCPA is "[t]aking or threatening

13

to take any nonjudicial action to effect dispossession or disablement of property unless . . . [t]here is a present right to possession of the property claimed as collateral through an enforceable security interest."  Conn. Agencies Regs. § 36a-647-5(5).  The Amended Complaint alleges that in July 2010, before the law day scheduled for September 16, 2010, Defendants "demanded that" Mr. Davis's family "voluntarily vacate the home in conformance with the judgment or face forcible foreclosure ejectment."  (Am. Comp. ¶¶ 28–29.)  Plaintiff contends that Hunt Leibert did not "properly advise Plaintiff's family . . . that . . . Defendants had an obligation to obtain an ejectment order after the law day passed and [Wells Fargo] was in title and that they would have an opportunity to contest or limit the terms of such ejectment."  (Pl.'s Opp'n at 8; *see also* Am. Compl. ¶ 40.)

Thus, Plaintiff has set forth sufficient facts to plausibly allege that Defendants used deceptive or misleading representations or practices in their attempt to collect a debt resulting from Plaintiff's mortgage deed, and Defendants' motion to dismiss is denied as to Count Three.

### D.    Fair Debt Collection Practices Act (Count Four)

Plaintiff alleges that Defendant Hunt Leibert's conduct violated 15 U.S.C. § 1692d of the FDCPA, which provides a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Hunt Leibert asserts that Plaintiff's FDCPA claim is barred by the one-year statute of limitations provided in 15 U.S.C. § 1692k(d), because Plaintiff's case, filed in July 2012, was not brought within one year of the foreclosure action (February 2009), the alleged communication with Plaintiff's wife and children (July 26, 2010), or the date Plaintiff

14

discovered that the foreclosure action had been dismissed (January 18, 2011). (Hunt Leibert's Mem. Supp. [Doc. # 19] at 12.)  Plaintiff does not dispute that the action was brought outside of the FDCPA's statute of limitations, but argues that the doctrine of equitable tolling should apply in this case.

The doctrine of equitable tolling applies only in "rare and exceptional" circumstances.  *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).  The Second Circuit has "applied the doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights.'"  *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal citations omitted). "Generally, equitable tolling applies only where defendant has engaged in conduct to conceal wrongdoing and, as a result, plaintiff fails to discover facts giving rise to the claim, despite the exercise of reasonable diligence."  *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158–59 (E.D.N.Y. 2007).

While the circumstances alleged here show that Plaintiff may have been unable to discover facts giving rise to his FDCPA claim until at least the time he returned from his overseas deployment, his complaint was filed over one year after this date.  Plaintiff acknowledged at oral argument that facts supporting equitable tolling must be pleaded. (Tr. at 47.)   While the statute of limitations is an affirmative defense and "[c]omplaints need not anticipate defenses and attempt to defeat them," what they "must plead is enough to show that the claim for relief is plausible."  *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).

The Amended Complaint does not contain any plausible factual allegations that Plaintiff was unable to exercise his rights under the FDCPA for the more than one year

period after Plaintiff received notice of the dismissal of the foreclosure action to support equitable tolling.   Plaintiff's opposition brief cites unspecified "special circumstances regarding the Plaintiff's lack of awareness of the relevant cause of action" (Pl.'s at 13) in support of equitable tolling.   However, conclusory statements in a memorandum of law are insufficient to defeat a statute of limitations defense.   *Cf. Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) ("Statements in her memoranda of law as to 'discovery' 'fraud' and 'concealment' can do nothing to save this complaint—even at the early pleading stage. Plaintiff can make no plausible claim in support of a timely FDCPA claim.").

Accordingly, Hunt Leibert's motion to dismiss Count Four is granted.

### E.        Negligent Infliction of Emotional Distress (Count Five)

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must plead: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.[9]   *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Defendants contend that Plaintiff's NIED claim fails because emotional damages are generally not available in a breach of contract claim.   (*See* Hunt Leibert's Mem. Supp. at 18; Wells Fargo's Mem. Supp. at 18.)   In support of this argument Defendants cite

---

[9] Although Plaintiff's opposition brief addresses intentional rather than negligent infliction of emotional distress (Pl.'s Opp'n at 19), the Amended Complaint alleges only a claim for NIED and, at oral argument, Plaintiff confirmed that he asserts only a NIED claim (Tr. at 51).

*Saunders v. Stigers*, 62 Conn. App. 138, 147 (2001) where the court noted that "[c]onstruction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly."  Here, however, Plaintiff has not simply alleged that, as in *Saunders*, Defendants failed to comply with the terms of the mortgage deed but rather has asserted a claim addressing broader conduct: that Defendants knowingly misled Mr. Davis to believe that a modification agreement had been accepted and then waited for Mr. Davis to be deployed and moved to foreclose on his home and evict his family without a writ of ejection or any notice or opportunity to respond, resulting in his family being uprooted and damage to his property and causing him "extreme mental anguish."  (*See* Am. Compl. ¶¶ 18–42, 66.)

These facts are sufficient to plausibly allege that Defendants' conduct created an unreasonable and foreseeable risk of causing and did cause emotional distress that was severe enough that it could have resulted in illness or bodily harm.  Thus, Defendants' motions are denied as to Count Five.

### F.     Breach of the Covenant of Good Faith and Faith Dealing (Count Six)

Plaintiff alleges a breach of the implied covenant of good faith and fair dealing against both parties in Count Six.  An action for breach of the covenant of good faith and fair dealing requires proof of "three essential elements:"

> [F]irst, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith.

17

*Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002), *aff'd* 80 F. App'x 707 (2d Cir. 2003).

Defendant Hunt Leibert argues that the claim against it must be dismissed because it was not a party to the underlying contract—i.e., the modification agreement. Plaintiff did not respond to this argument in its opposition brief but at oral argument cited the allegation of the Amended Complaint that "Defendants acted as the agent of one another" (Am. Compl. ¶ 10) and contended that Hunt Leibert could be held liable for Wells Fargo's actions related to this count.  While an attorney acts as an agent for its client, Plaintiff cites no authority and pleads no facts to suggest the reverse, i.e., that Wells Fargo was acting as an agent for its attorney in negotiating the modification agreement. Thus, Count Six is dismissed as to Hunt Leibert.

However, as to the claim against Wells Fargo, Plaintiff has alleged sufficient facts to plausibly state a claim: Plaintiff and Wells Fargo were parties to the modification agreement, Wells Fargo engaged in conduct that injured Plaintiff's right to receive the benefits contemplated in the agreement, i.e., that Plaintiff's home would not be foreclosed on, and that Wells Fargo acted in bad faith.  Wells Fargo asserts that Plaintiff has not actually alleged that it acted in "bad faith," however, while the Amended Complaint does not recite the words "bad faith," it sets forth facts that plausibly suggest that Wells Fargo acted with "a dishonest purpose," or an "interested or sinister motive," *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*, 132 Conn. App. 85, 99 (2011), when it entered into a modification agreement with Mr. Davis, leading him to believe his property would not be foreclosed on and would house his family until his return from deployment, and then waited until after he was deployed on active duty in October 2009

to refuse his monthly payments, reopen the closed foreclosure action, and begin foreclosing on his home and then abandoned its upkeep. Accordingly, Wells Fargo's motion to dismiss Count Six is denied.

## II.      Conclusion

For the reasons discussed above, Hunt Leibert's Motion [Doc. # 19] to Dismiss is DENIED as to Counts One, Two, Three, and Five and GRANTED as to Counts Four and Six; Wells Fargo's Motion [Doc. # 20] to Dismiss is DENIED in its entirety.


                                IT IS SO ORDERED.

                                _____/s/_____
                                Janet Bond Arterton, U.S.D.J.


                        Dated at New Haven, Connecticut this 7th day of November, 2014.