UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DAVIS,<br>    *Plaintiff*,<br>    *v.*<br>HUNT LEIBERT JACOBSON, P.C. and WELLS FARGO BANK, N.A.,<br>    *Defendants.* | Civil No. 3:12cv1102 (JBA)<br><br>January 20, 2015 |

**RULING ON DEFENDANTS' MOTIONS FOR RECONSIDERATION**

Defendants Hunt Leibert and Wells Fargo Bank move [Doc. ## 46, 47 49][1] for partial reconsideration of the Court's Ruling [Doc. # 44] on Defendants' Motion to Dismiss (the "Ruling"). For the reasons that follow, Defendants' motions are denied.

**I.   Legal Standard**

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

---

[1] Wells Fargo's initial motion [Doc. # 47] has been superseded by a corrected version [Doc. # 49] and is therefore denied as moot.

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

## II.     Discussion

Defendants seek reconsideration of the Ruling to the extent that it denied their motions to dismiss Count Two alleging violations of the Connecticut Unfair Trade Practices Act ("CUTPA"). Defendants contend that "[i]t appears that . . . the Court may have overlooked Connecticut Supreme Court law holding that CUTPA only applies to the entrepreneurial aspects of a lawyer's practice."[2] (Hunt Leibert's Mot. at 1; Well Fargo's Mot. at 1 (adopting the briefing and arguments of Hunt Leibert).) The Ruling, however, discussed Defendants' original contentions that the litigation privilege applied and, after discussing the scope of the privilege, concluded:

> The allegations in the pleadings of the complaint at hand stand apart from conduct protected by the litigation privilege. Plaintiff's claims do not arise simply from Defendants' litigation conduct and statements but rather more broadly allege that Defendants engaged in "unethical, unscrupulous, willful or reckless" behavior by leading Plaintiff to believe that the foreclosure action against him had been dismissed, and once he was deployed and unable to respond, reopening the action and beginning to

---

[2] The Connecticut Supreme Court has explained that "in general, CUTPA applies to the conduct of attorneys" and "[t]he statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law," *Suffield Dev. Associates Ltd. P'ship v. Nat'l Loan Investors, L.P.*, 260 Conn. 766, 781 (2002), but has held that "[t]he noncommercial aspects of lawyering—that is, the representation of a client in a legal capacity—should be excluded [from liability under the CUTPA] for public policy reasons," *Haynes v. Yale–New Haven Hosp.*, 243 Conn. 17, 699 A.2d 964, 973 (1997). Therefore, "only the entrepreneurial aspects of the practice of law are covered by CUTPA," which applies to only "a well-defined set of activities—advertising and bill collection, for example." *Suffield Dev. Associates*, 260 Conn. at 782.

> foreclose on his home, and threatening his wife and children with ejectment even though foreclosure had not been completed. (*See* Am. Comp. ¶ 21.) Such conduct was not in furtherance of litigation and thus is not protected by the litigation privilege.

(Ruling at 11.)

Defendants do not cite any facts or case law that the Court overlooked but instead maintain as they did originally (*see* Hunt Leibert's Mem. Supp. Mot. Dismiss [Doc. # 19] at 17–18) that the litigation privilege applies to their conduct because the Amended Complaint alleges that Hunt Leibert is a law firm retained by Wells Fargo to "commence a foreclosure litigation lawsuit against the Plaintiff" (Am. Compl. ¶¶ 8, 15) and the remaining allegations of the CUTPA claim in "Count Two all concern actions allegedly taken by Hunt Leibert on behalf of [its] client in the alleged litigation" and there are no allegations "relating to the 'entrepreneurial aspect' of Hunt Leibert's practice, i.e. advertising or bill collecting." (Hunt Leibert's Mem. Supp. [Doc. # 46-1] at 4.)

Defendants' interpretation of the conduct alleged to be a CUTPA violation is excessively narrow. The CUTPA count "reallages . . . and incorporates each and every allegation" in the complaint (Am. Compl. ¶ 47) and the Court has already noted that the scope of the conduct alleged is far broader than Defendants now contend:

> As confirmed at oral argument (Tr. at 42–43), the allegations relevant to the CUTPA count are that Defendants led Mr. Davis to believe that the foreclosure action against him had been dismissed, and once he was deployed, Defendants refused mortgage payments made pursuant to the negotiated agreement and reopened the foreclosure action, continuing anew the foreclosure on his home and forcing his wife and children to leave the premises under threat of ejectment before Wells Fargo had the legal right to seek ejectment (*see* Am. Compl. ¶¶ 23–31).

(Ruling at 9–10.)

3

Therefore, Defendants are incorrect that the CUTPA count is based only on conduct in furtherance of the foreclosure action.  The foreclosure action against Plaintiff was effectively dismissed due to the parties' settlement before he was deployed overseas and the "situation alleged in the Amended Complaint is analogous to one in which Defendants filed against Plaintiff a new foreclosure action, of which he had no knowledge and was unable to defend having been deployed." (Ruling at 8.)  Plaintiff alleges that Defendants misled him into believing that the case had been dismissed and then waited until he was deployed to reopen the action and threatened his wife and family with eviction even though foreclosure had not been completed. (*Id.* at 11.)

Thus, Plaintiff has alleged more than conduct in furtherance of litigation but instead has alleged that Defendants used unscrupulous means outside of the judicial process to collect on the mortgage.  As the Court has already noted (*id.* at 11–12), CUTPA can redress the "pursuit of the remedy of foreclosure in contravention of the terms of the parties' forbearance agreement." *CitiMortgage, Inc. v. Rey*, 150 Conn. App. 595, 599 (2014); *see also Pellechia v. OneWest Bank, FSB*, 3:11-CV-1587 (JCH), Ruling on Motion to Dismiss [Doc. # 91] at 18 (D. Conn. Aug. 24, 2012) ("[T]o the extent that [Plaintiff's] CUTPA claims are based not on [Defendants'] statements during the Foreclosure Action but instead on violation of the [Federal Debt Collection Practices Act] itself, the litigation privilege might not directly apply.").  Accordingly, the Court will adhere to its prior ruling that Plaintiff has plausibly alleged conduct outside the scope of the CUTPA litigation privilege.

Wells Fargo further contends that Defendants are protected by the absolute privilege (not particular to CUTPA claims) that applies to "communications uttered or

4

published in the course of judicial proceedings . . . pertinent to the subject of the controversy," *Hopkins v. O'Connor*, 282 Conn. 821, 830-31 (2007) (internal quotation marks omitted), because "Defendants' conduct is alleged to have occurred 'in the institution of,['] or 'during' or 'in the course of' a judicial proceeding in which Defendants were participating" and was "directed to obtaining one or more goals of the proceedings—obtaining a judgment of foreclosure and an ejectment" (Wells Fargo's Mem. Supp. [Doc. # 50] at 3.)  As the cases cited by Wells Fargo make clear, the litigation privilege applies primarily to statements and conduct made during the course of a judicial proceeding.  Wells Fargo offers no support for its exceedingly broad interpretation that the privilege also applies to non-judicial conduct that occurs when a civil action has been effectively dismissed so long as such conduct happens to be in furtherance of the same goal that had been pursued during the litigation.[3]  Wells Fargo's interpretation would effectively immunize scores of unscrupulous actions occurring after litigation has concluded so long as the conduct was in furtherance of goals that had previously been pursued in court.

---

[3] In support of this argument Wells Fargo misleadingly contends that "the Connecticut Supreme Court held that the absolute privilege is so broad that it 'is available when the  . . . matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." (Wells Fargo's Mem. Supp. at 3 (quoting *Hopkins v. O'Connor*, 282 Conn. 821, 833 (2007) (omission in original).)  The omitted portion of Defendant's quotation is "defamatory," demonstrating that the Supreme Court was outlining the limitations of the privilege and was referring only to the scope of the privilege as it relates to judicial statements, not conduct outside the judicial process.  *See Hopkins*, 282 Conn. at 833.

### III. Conclusion

Defendants' Motions for Reconsideration [Doc. ## 46, 47, 49] are DENIED.

                                               IT IS SO ORDERED.

                                            /s/_____
                                        Janet Bond Arterton, U.S.D.J.

                    Dated at New Haven, Connecticut this 20th day of January, 2015.