UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------------------x

JAMES DAVIS,

                *Plaintiff,*                Civ No.3:12-cv1102(JBA)

-against-

WELLS FARGO BANK, NA and
HUNT LEIBERT JACOBSON PC,

                *Defendants*.

-------------------------------------------------------------------x

      Plaintiff, JAMES E. DAVIS, responds to the Motion to Compel of Defendant Hunt Leibert as follows:

**Interrogatory #2**

Over the life of the litigation, Plaintiff has provided without prior request all documents related to its damages.  There should be no burden placed on the Plaintiff to do math or to itemize each item of damage. Plaintiff has provided these documents and information to the best of its ability and provided all information that he has available to him.  These areas were explored in depth at Plaintiff's current deposition.  Plaintiff has the following further response to said interrogatory:

      2. Explanation of losses

Type: Damage to house
Dollar Amount: $177,000.00
Method: Estimate by contractor Date: Date is on estimate provided.

NOTE: AT INCEPTION OF THE LITIGATION PLAINTIFF PROVIDED DETAILED ESTIMATES FROM SEVERAL CONTRACTORS REGARDING DAMAGE TO THE HOUSE.  ADDITIONALLY, DEFENDANTS HAVE RECEIVED COPIES OF ALL INSURANCE CLAIMS MADE JOINTLY BY PLAINTIFF AND DEFENDANT WELLS FARGO WHICH DETAIL SPECIFICALLY THE NATURE OF THE DAMAGE, THE DATES INCURRED AND THE SPECIFIC AMOUNTS OF EACH SPECIFIC DAMAGE.  PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT THESE CHARGES AT HIS DEPOSITION ON AUGUST 12, 2015.

Type: Money lost on purchase and subsequent sale of garden tractor and wagon
Dollar Amount: Loss of $900.00
Method: Approximately $1400.00 for the tractor and wagon. Sold prior to support moving costs for $500.00.
Date: August 2010.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT THESE CHARGES AT HIS DEPOSITION ON AUGUST 12, 2015. PLAINTIFF HAS REQUESTED FURTHER SEARCH OF HIS RECORDS SHOWING THE INITIAL COST OF THIS DAMAGE.

Type: Rent paid in Maine instead of on our mortgage.
Dollar Amount: Current value is approximately $145,000.00
Method: Copies of money paid to Balfour Beatty provide to our attorney through June 2015. This number continues to increase each month as we currently pay $1750.00 a month in rent. This amount started in June 2015.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT THESE CHARGES AT HIS DEPOSITION ON AUGUST 12, 2015. PLAINTIFF FURTHER PROVIDED A THREE PAGE SUMMARY AND LEDGER PREPARED BY BALFOUR REALTY TO SHOW EACH PAYMENT MADE.  PLAINTIFF HAS REQUESTED BANK RECORDS SHOWING THE PAYMENTS, BUT HAS NOT YET RECEIVED SAME WHICH WILL BE PROVIDED WHEN AND IF RECEIVED.  DEFENDANTS ARE ON AN EQUAL OR BETTER FINANCIAL POSITION TO SUBPOENA THESE RECORDS WHICH ARE NOT IN PLAINTIFFS POSSESSION.

Date: From August 2010 until now
Type: Money lost through high interest loan.
Dollar Amount: $13,000.00
Method: I ended up paying approximately $22,000.00 for a $9,000.00 truck. I am waiting for the loan paperwork from Credit Acceptance.
Date: Truck was paid off in May 2015

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT THESE CHARGES AT HIS DEPOSITION ON AUGUST 12, 2015. PLAINTIFF HAS REQUESTED FURTHER SEARCH OF HIS RECORDS SHOWING THE DETAIL OF THIS ITEM WHICH WILL BE PROVIDED WHEN AND IF RECEIVED.  DEFENDANTS ARE ON AN EQUAL OR BETTER FINANCIAL POSITION TO SUBPOENA THESE RECORDS WHICH ARE NOT IN PLAINTIFFS POSSESSION.

**Interrogatories y 3 and 4**

Plaintiff has provided this information to the best of his knowledge and control.  He has no records concerning these treatments.  Absent having treated, he has little recollection of same.

Much of the treatment request goes back to 2009.  He was questioned in detail about this and all of this medical treatment at his deposition on August 12, 2015 at which he testified to the best of his recollection and ability.  He also provided several medical HIPPA releases to counsel for Defendant at the deposition to enable them to obtain further medical records, if possible from the treating medical professionals.  At his discharge from the Navy recently he was given a "medical records" disc and he has further agreed to provide same to Defendants within the next 30 days.

**Interrogatory #6**

Plaintiff provides the following additional response to Interrogatory #6:

I do not have the dates or specific names of people I interacted with at Wells Fargo or Hunt, Leibert, and Jacobsen PC. Most of the letters were delivered by the U.S. mail system. I immediately called Wells Fargo to discuss them. During many of the phone calls with Wells Fargo was transferred several times and talked to multiple individuals from different departments. First and last names were not discussed. I did have conversations regarding mediation of our mortgage, payment schedule, ways to keep our house, financial status, and problems with our account through Wells Fargo. I had a very specific conversation just prior to contacting my attorney, Mr. Stern, about discrepancies in our account and the need to request a formal review of it. I asked if I should get a lawyer and the member stated that I could even though Wells Fargo would do the formal review. That conversation was the sole reason for contacting a lawyer. Up to that point I as resigned to the fact I had lost our house and was going to have to pay some amount of money back to Wells Fargo.  I was never given the names of persons that I communicated with.  Many of the communications were between my wife and the Defendants at times that I was at sea and unavailable to speak with them.

NOTE:  PLAINTIFF AND HIS WIFE WERE QUESTIONED AT LENGTH AT THEIR DEPOSITIONS RECENTLY AND ALL OF THESE SUB-PARTS WERE ANSWERED TO THE BEST OF THEIR KNOWLEDGE AND ABILITY.  AT THE DEPOSITIONS ON AUGUST 12 AND 13, 2015, AN EXHIBIT WAS MARKED AS EXHIBIT #42 WHICH PURPORTS TO BE A COURT FORM OF EJECTMENT THAT BOTH PLAINTIFF AND HIS WIFE TESTIFIED COULD HAVE BEEN THE FORMAT OF THE COMMUNICATION IN THIS MATTER.  THEY TESTIFIED ABOUT THIS WRITING AND FOLLOW UP TELEPHONE CALLS THAT THEY HAD WITH DEFENDANTS. FURTHER, BOTH DEFENDANTS HAVE PROVIDED EXTENSIVE RECORDS OF COMMUNICATIONS ORAL AND WRITTEN WITH PLAINTIFF, BUT LACKING THE IDENTITY OF THE PERSONS COMMUNICATING ON BEHALF OF THE DEFENDANTS.  SAID RECORDS AND THE IDENTITY OF THE PERSONS REPRESENTING THE DEFENDANTS IN SUCH COMMUNICATIONS HAS BEEN REQUESTED BY PLAINTIFF (*SEE OBJECTION TO MOTION FOR PROTECTIVE ORDER, DOC. #80- EXHIBIT I)*, BUT NOT PROVIDED BY THE DEFENDANTS LEAVING THE PLAINTIFF AT AN INFERIOR AND PREJUDICED POSITION WITH REGARD TO THE IDENTITY OF SPECIFIC PERSONS COMMUNICATING THE PLAINTIFF DURING THE RELEVANT TIME PERIODS.

**Interrogatories 7-10**

The specific factual basis for the various causes of action are specifically plead at Paragraphs 11 through 42 of the First Amended Complaint. Further specific information was developed by all parties in the prior Motions to dismiss (Doc## 19 and 20) as well as summarized in the Court's ruling on the motion (Doc. #44).  Further, Defendants have in their possession and control each and every of the court pleadings, docket entries, notes of communications between Plaintiff and Defendants,  and court transcripts demonstrating each of court hearings which detail all of Defendant Hunt Leibert's actions in this matter which support the allegations of the complaint. All parties have prepared and exchanged detailed time lines of the relevant dates and actions of the parties relevant to the actions in this matter.  The discovery sought is already in the possession and control of the Defendants and is further unreasonably cumulative or duplicative.  Further these interrogatories are objectionable to the extent that they require the Plaintiff, as a lay person, to "match up" documents and facts already provided to specific legal theories.

Plaintiff's citation to *D.L. v District of Columbia,* 251 F.R.D. 38 (DDC 2008)  is inapposite as in that case the responding party made blanket, objections and references to other documents without responding to any discovery in a calculated effort to obstruct discovery completely. Such is not the case here.

**Interrogatory #11**

Plaintiff provides the following additional response to Interrogatory # 11:

I applied with USAA. I received a verbal answer that I could not be approved through them. I did not maintain the follow on letter. I am attempting to get a copy from USAA.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT THESE CHARGES AT HIS DEPOSITION ON AUGUST 12, 2015. PLAINTIFF HAS REQUESTED FURTHER SEARCH OF HIS RECORDS SHOWING THE DETAIL OF THIS ITEM WHICH WILL BE PROVIDED WHEN AND IF RECEIVED.  DEFENDANTS ARE ON AN EQUAL OR BETTER FINANCIAL POSITION TO SUBPOENA THESE RECORDS WHICH ARE NOT IN PLAINTIFFS POSSESSION.

**Interrogatory #12**

Plaintiff provides the following additional response to Interrogatory # 11:

As you reach the upper ranks of enlisted personnel in the military, in order to advance, you must take on a job that is challenging and shows upward progression. Since my boat was going to be in Portsmouth, NH when I transferred, the amount of money I would owe for the foreclosure, and money was tight I could not just transfer to any job. I took a job in the area for the above reasons.

The job I have now is in jeopardy due to my inability to maintain my security clearance. The lawsuit and credit problems are the reasons provided by NCIS for the refusal of my clearance.

NOTE: PLAINTIFF FURTHER TESTIFIED AND EXPLAINED IN HIS DEPOSITION OF AUGUST 12, 2015 CONCERNING THE DETAILS OF HIS JOB HISTORY IN AND OUT OF THE U.S. NAVY AND HOW THE LAWSUIT AND ACTIONS OF THE DEFENDANTS ARE EFFECTING HIS JOB POSITION AND EARNING ABILITY.  HE ALSO EXPLAINED DURING THE DEPOSITION ABOUT THE DYNAMIC OF MILITARY HOUSING AND THE DIFFERENCE IN CASH FLOW DUE TO HIS MOVE TO KITTERY AFTER THE DEFENDANTS NOTIFIED HIM TO MOVE.

**Interrogatory #15**

Plaintiff provides the following additional response to Interrogatory # 15:

I made the decision when we received the letter stating we had to be out of the house by September 2010 and I discussed it with Wells Fargo. I was told if I could not pay the back money on their terms we would have to vacate by the date on the letter. We moved in the end of August when I got paid.

NOTE: AT THEIR DEPOSITIONS BOTH PLAINTIFF AND HIS WIFE TESTIFIED THAT THEY RECEIVED A DEMAND FROM THE DEFENDANTS AT THE END OF JULY AFTER THE JULY 26 FORECLOSURE WAS GRANTED.  AT SOME POINT THEY WERE SERVED WITH A NOTICE TO GET OF THE HOUSE, AND THEY COMPLIED WITH THE DEFENDANTS' REQUEST.

**Interrogatory #16**

Plaintiff provides the following additional response to Interrogatory # 15

The questions in Interrogatory #16 do not reflect the process for a military move. You are not made to move your family and therefore are not notified or given a date of reassignment. We were aware the boat was moving after my return from deployment in April. The exact date of the move was not determined until later. I was going to move with the boat while my family stayed in CT until the foreclosure. When we moved we moved into military housing we relocated.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT HIS NAVAL CAREER AND EACH OF HIS DUTY STATIONS AND ABOUT THE CHOICE OF MOVING HIS FAMILY TO KITTERY MAINE.  PLAINTIFF HAS REQUESTED FURTHER SEARCH OF HIS RECORDS SHOWING THE DETAIL OF THIS ITEM WHICH WILL BE PROVIDED WHEN AND IF RECEIVED.

**Interrogatory # 17**

Plaintiff provides the following additional response to Interrogatory # 17

We have made no repairs to the property. The Defendant Well Fargo has at all time after August 12 has control of the property and has taken various steps to secure and repair the house. The exact nature of the damages are varied and summarized in the estimates, documents and pictures already provided to Defendants.  Doors and windows were broken, the furnace was stolen, most wire and piping were stripped from the house, walls were broken, counters were stolen and much of the house is damaged due to weather and mold.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT EACH OF THE ESTIMATES FOR DAMAGE AND THE VARIOUS PICTURES PREVIOUSLY PROVIDED TO DEFENDANTS.  FURTHER, PLAINTIFF HAS REQUESTED THIS INFORMATION FROM DEFENDANT WELLS FARGO, BUT HAS NOT BEEN PROVIDED SAME.

**Interrogatory #19**

Plaintiff provides the following additional response to Interrogatory # 19

No other efforts were made to mitigate the damages in our complaint. Once were directed to vacate the property I did not return until I heard about the damages. Yard upkeep had been performed, the house had been posted with signs stating it had been winterized and boards were placed on the windows and some doors. Ownership was with Wells Fargo to the best of our knowledge.

NOTE: PLAINTIFF WAS QUESTIONED IN DETAIL ABOUT HIS ACTIONS SURROUNDING THE PROPERTY AND MITIGATING DAMAGES TO HIS CREDIT, EMPLOYMENT AND OTHER ISSUES OF DAMAGE IN THE CASE.  FURTHER, AS DEFENDANTS ARE AWARE, INSURANCE CLAIMS HAVE BEEN FILED ON THE FORCED PLACE INSURANCE, BUT NOT YET FINALIZED.

**Request for Production #1,2 and 5**

These requests are overly broad and not reasonably calculated to lead to discoverable evidence. Each and every document, photograph and pleading which is in the Plaintiff's possession and control has been produced voluntarily at the beginning of this case.  Except to the extent that Plaintiff has agreed to attempt to obtain documents in the possession and control of others, Plaintiff has no further documents to produce.

**Production Request #3**

This was accomplished at the depositions in Portsmouth, New Hampshire.

**Production Request #4**

Tax return for 2008 was incorporated in other documents already produced and in the possession of the Defendants. Plaintiff testified about this document at his deposition. Further authorization were given to Defendant's counsel at the depositions in Portsmouth, New Hampshire.

**Production Request #6**

See responses above, Int. # 12 and 13 and Prod. #4. which are incorporated by this reference.

**Production Request #7**

Plaintiff testified at his deposition that he did not have any documents responsive to this request other than as already provided.

**Production Request #8**

Plaintiff and counsel have already disclosed that this matter is being litigated by Plaintiff's counsel on a modified pro bono basis. Plaintiff has not incurred any cost or expense in this litigation and attorneys fees claims are not ripe unless otherwise awarded by the Court or Jury, as may be appropriate at a later date. Specific billing statements contain attorney client information and are not discoverable.

**<u>Production #12</u>**

All documents, to the extent available to Plaintiff have been produced. Defendants are aware and have documented Plaintiff's military service in their own files. This was a VA insured loan. In pleading in the Connecticut Superior Court Defendants allege his military service. To date they have failed to produce as requested their documents which document and outline their knowledge of his military service.

**<u>Production #13 and 15</u>**

#13 - All documents and photographs regarding the damage to the property, including photographs, estimates of repair and insurance claims have been provided.

#15 - All insurance claims have been provided to Defendants previously. The Defendant Wells Fargo has been in possession and control of the real property since August 2010.

**Production #14**

All insurance claims have been prosecuted by Defendants. They have been provided with any and all correspondence from or on behalf of Plaintiff regarding same. Defendants have failed to provide final insurance information to Plaintiffs. Furthermore, Defendants have disclosed that they have received at least two (2) checks from the insurance proceeds, but have not notified or provided said funds, or their application to Plaintiff.

**Production #17**

All photographs taken by or on behalf of Plaintiff have been provided previously. Defendants have failed to provide any photographs of the subject property, although same has been requested. To the extent Plaintiff can locate documents prior to vacating the house, same will be provided.

**Production #18**

Plaintiff has not had the property appraised. Appraisals were filed with the Connecticut Superior Court by Defendant Hunt Leibert in connection with the foreclosure. See Docket entry # 120.000 in Wells Fargo vs. Davis DN CV-09-5004294S. This document was produced by Defendant Hunt Leibert. Furthermore, Plaintiff believes that Defendant Wells Fargo may have additional appraisals in its files. Plaintiff has requested these documents, but not received them from Defendant.

**Production #19**

Same as above.

**Production #20**

This documents and related documents supporting Plaintiff's claims have already been produced to the extent in the Plaintiff's possession and control.

**Production #22**

Plaintiff's have produced all documents in their possession and control. They have requested bank information for further documentation, which will be produced when and if received by Plaintiff. The date and amount of payments on the mortgage is not in dispute between the parties. Defendant Hunt Leibert had to have this information *prior* to filing its foreclosure lawsuit. Furthermore, Defendant Wells Fargo is in a superior position to provide this information. This information has been requested, but not provided by Defendant Wells Fargo.

**Production #23**

Plaintiff kept no specific records as to what document it received from whom. Plaintiff testified that it did not retain any of the court or other documents relating to the foreclosure after his move to Kittery Maine. Defendant Hunt Leibert was the attorney of record at all relevant times and in a better position to know and identify which documents were received from the Court. Both Defendants have a complete litigation file showing this and more. Further, Plaintiff attempted to review and recreate the Court's own file, but was advised that it was destroyed prior to being able to do so. (Exhibit A).

**Argument**

A response to an interrogatory that the information is "unknown" or not recalled is not incomplete or evasive. *Economu v Butz,* 466 F.Supp 1351 (SDNY 1979), aff'd wo op *Economu v US Dept. Of Agriculture*, 633 F2d 203 (2nd Cir. 1980).

The Rule 26(b)(2) provide for direct court involvement in potentially limiting the scope of discovery. The Rule specifies three considerations which, if present, require the court to limit the scope of otherwise permissible discovery. Rule 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues./14/

Rule 26(b)(2)(C) grants courts the discretion to weigh the burden or expense of proposed discovery against an assessment of its likely benefit, considering the needs of the case and the importance of the discovery in resolving the issues. The Rule "places an obligation on the trial court to limit the frequency or extent of discovery otherwise permitted by Rule 26(b)(1) based on a balancing analysis" that is "written in mandatory terms." Courts have "considerable authority to limit a party's pursuit of otherwise discoverable information where the burden of a discovery request is likely to outweigh the benefits." This coincides with the general direction of Rule 26 that "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."

The purpose of the Rule is to "promote judicial limitation of the amount of discovery on a case–by–case basis to avoid abuse or overuse of discovery through the concept of proportionality." This doesn't necessarily mandate that the parties or the court must undertake a detailed assessment of the merits and their relationship to the discovery needs of the action. "In general, it seems that the proportionality provisions should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for counsel to undertake complex analysis." Nor is it a "warrant to implement personal views about the importance of issues raised." SEE . *Thompson v. Department of Housing & Urban Development*, 199 F.R.D. 168, 172 (D. Md. 2001).

**Conclusion**

Plaintiff's have made a good faith effort to produce all information and documents in their possession and control, without exception. To the extent that they do not have these documents, they are continuing to make efforts to get these documents produced and ready for trial. To a large extent these documents were produced voluntarily without the necessity of formal discovery at the inception of the case. To their detriment, Defendants have and continue to impeded and not cooperate with their discovery. For the foregoing reasons the Motion to Compel should be denied in all respect.

                                          THE PLAINTIFF

By: /s/ Mark Stern

                     Mark Stern, Esq. (CT01701)
                     Mark Stern & Associates, L.L.C.
                     PO Box 2129
                     Norwalk, CT 06852-2129
                     Phone: (203) 853-2222/ Facsimile: (203) 857-0593
                     Email: mark@msternlaw.com

**CERTIFICATION**

I hereby certify that on August 17, 2015, a copy of the within pleading was filed electronically and was served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

Dated: August 17, 2015 at Norwalk, Connecticut

_____
Mark Stern