## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DAVIS, )<br><br>Plaintiff, )<br><br>v. )<br><br>HUNT LEIBERT JACOBSON, P.C. AND )<br>WELLS FARGO BANK, N.A. )<br><br>Defendants. ) | CIVIL ACTION NO. 3:12-cv-01102-JBA<br><br><br>February 11, 2016 |

## MOTION OF DEFENDANT WELLS FARGO BANK, N.A. FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF

Pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (C), defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves for an order of sanctions, up to and including dismissal of this action against Wells Fargo, for discovery misconduct by plaintiff James Davis (the "Plaintiff").  As set forth in greater detail below, Plaintiff's discovery transgressions, which started at the outset of this case and continued after issuance of this Court's Oct. 20, 2015 Order compelling his compliance with outstanding discovery obligations owed to Wells Fargo (D.E. 90), are cumulative and severely prejudice Wells Fargo's ability to defend Plaintiff's claims. Specifically, Wells Fargo requests that Plaintiff be sanctioned for his failure to adequately and timely serve responses to Wells Fargo's interrogatories and requests for production of documents; his failure to preserve critical and responsive electronically stored information ("ESI"), including relevant email evidence; his failure to timely and adequately comply with the Oct. 20, 2015 Order; and, most egregiously, his misconduct in spoliating responsive ESI by disposing of his computers and smart phones housing relevant email evidence.  As set forth in

the attached affidavit in support of this motion, Wells Fargo's counsel has conferred with Plaintiff's counsel multiple times in a good faith effort to try to resolve or narrow this discovery dispute, to no avail.[1]

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint (D.E. 1) on or about July 31, 2012, and his Amended Complaint on or about December 6, 2012.  (D.E. 18.)  The Amended Complaint alleges that Wells Fargo and its foreclosure counsel, co-defendant Hunt Leibert Jacobson, P.C. ("Hunt Leibert"), violated the Servicemembers' Civil Relief Act ("SCRA"), 50 U.S.C. App. § 501 *et seq.*, now codified at 50 U.S.C. § 3901 *et seq.*,[2] and various state statutes, when prosecuting a state court foreclosure action in connection with Plaintiff's default on a first mortgage loan on real property located in Plainfield, Connecticut (the "Property").  (See D.E. 18.)  On November

---

[1] On December 14, 2015, Wells Fargo, moved to extend the dispositive motions deadline of December 21, 2015, to permit Wells Fargo time to file a motion for sanctions and spoliation. (See Docket Entry No. ("D.E.") 101.)  In denying that motion, the Court stated that its denial was "without prejudice" to renewal "after any contemplated motion for sanctions is filed."  (D.E. 103.)  Wells Fargo proceeded to file its summary judgment motion on the December 21, 2015 deadline.  (See D.E. 108 & 109.)  Plaintiff filed his opposition on January 11, 2016.  (D.E. 120.) The motion for summary judgment was submitted upon Wells Fargo's filing of its reply brief on February 9, 2016.  (D.E. 130 (the Court has scheduled oral argument on February 29, 2016, 02/03/2016 D.E.).)  Wells Fargo's counsel held off on filing this motion based on Plaintiff's counsel's assurances given during a discovery disputes conciliation telephone conference on December 14, 2015, that Plaintiff would be making a further supplemental discovery response to Wells Fargo, and that Wells Fargo should hold off on filing a motion for discovery sanctions to provide him with the opportunity to do so.  (See Second Affidavit of David Bizar (the "Second Bizar Aff.") at ¶ 8.)  Plaintiff's supplemental responses, made without any new document production, were not served until January 4, 2016, three weeks later.  (Id. at ¶ 9.)  Since then, Wells Fargo's counsel has reviewed Plaintiff's supplemental responses, and determined that they are still inadequate and non-compliant with this Court's October 20, 2015 order compelling Plaintiff to completely respond to Wells Fargo's outstanding discovery (the "Oct. 20, 2015 Order"; D.E. 90).  Wells Fargo then proceeded to complete and file this motion as promptly thereafter as possible given other motion filing deadlines in this case and its lead counsel's extremely limited in-office schedule since early January, 2016 when Plaintiff's supplemental discovery responses were served.  (See Second Bizar Aff. at ¶¶ 9, 10.)
[2] For consistency and ease of reference, Wells Fargo refers to the provisions of the SCRA by their former codified sections throughout this motion.

7, 2014, this Court issued its decision and order denying Wells Fargo's motion to dismiss (the "Nov. 7, 2014 Order on MTD"; D.E. 44.)  In its Nov. 7, 2014 Order on MTD, this Court noted that the Plaintiff is only alleging a violation of § 521 of the SCRA, not § 522, (D.E. 44 at 6 n.7), and that his SCRA claim could proceed under the theory that the state court foreclosure action went forward against him in the spring and summer of 2010 "without notice to him . . . or the opportunity to defend."  (Id. at 6-7.)

On May 30, 2013, Wells Fargo served its First Request for Production of Documents (the "Document Requests") and First Set of Interrogatories (the "Interrogatories") on Plaintiff. (Second Bizar Aff. at ¶ 5.)  On June 25, 2013, the parties filed a Joint Motion to Stay Litigation Pending Mediation and in the alternative to Extend the Discovery Deadline.  (D.E. 28.)  On June 26, 2013, the Court allowed the stay motion (D.E. 29), and the case was referred to Magistrate Judge Joan G. Margolis for a settlement conference.

The case did not settle; on March 6, 2014, Plaintiff filed his Motion to Reopen Case and Restore to Docket.  (D.E. 38.)  He also filed a Rule 26(f) report proposing a discovery deadline of September 26, 2014.  (D.E. 39.)  The Court allowed the motion, restored this case to its active docket, and ordered a discovery deadline of January 9, 2015.  (D.E. 40.)

On March 18, 2014, counsel for Wells Fargo emailed Plaintiff's counsel and attached the previously served written discovery requests.  Plaintiff's counsel failed to respond.  (Affidavit of David Bizar in Support of Motion by Wells Fargo to Compel (the "First Bizar Aff.") at ¶ 4.)[3]  On May 19, 2014, Wells Fargo's counsel sent a letter to Plaintiff's counsel asking when he "could

---

[3] The First Bizar Aff. along with its attachments (D.E. 86-1) were filed in support of Wells Fargo's September 8, 2015 Motion to Compel Plaintiff to Respond to Written Discovery (Wells Fargo's "Motion to Compel"; D.E. 86); since these documents are already contained on the Court's docket, they are not being re-filed with the present motion.

expect to receive Plaintiff's responses to Wells Fargo's written discovery requests."  (Id. at ¶ 5.)
Plaintiff's counsel again failed to respond.

On June 11, 2014, Wells Fargo's counsel sent an email to Plaintiff's counsel asking "to
confer with [Plaintiff's counsel] and discuss the discovery issues between [Wells Fargo and
Plaintiff] in detail in a good faith effort to reduce the area of controversy, and to arrive at a
mutually satisfactory resolution."  (Id. at ¶ 6.)  On June 13, 2014, Plaintiff's counsel responded
and stated, "[W]e will again provide  you with these documents and a formal response to your
production on or before July 3, 2014."  (Id. at ¶ 7.)  On July 2, 2014, Plaintiff's counsel sent an
email stating that his "clients need a couple more days on the discovery."  (Id. at ¶ 8.)  On
August 1, 2014, Plaintiff's counsel sent a follow-up email stating, "My client have [sic]
completed the interrogatories and I anticipate getting them out Monday."  (Id. at ¶ 9.)  On
September 10, 2014, Plaintiff's counsel sent an email with a link to some photographs.  (Id. at ¶
10.)

On February 23, 2015, the Court entered a revised scheduling order.  (D.E. 69.)  The
order required Plaintiff to provide responses to Wells Fargo's Interrogatories and Document
Requests by March 4, 2015.  (See id.)  It also set a deadline of September 22, 2015 for all
discovery to be completed.  (Id.)  On March 12, 2015, Plaintiff provided incomplete responses to
Wells Fargo's Interrogatories.  (First Bizar Aff. at ¶ 11.)  Plaintiff did not provide any written
response to Wells Fargo's Document Requests, and produced only 348 pages of documents with
no explanation as to which documents responded to which request.  (Id.)

On July 24, 2015, Wells Fargo's counsel sent a letter to Plaintiff's counsel describing
numerous deficiencies in Plaintiff's written discovery responses.  (Id. at ¶ 12.)  The letter set a
deadline of August 10, 2015 to provide complete supplemental responses.  This date would have

4

provided Wells Fargo's counsel adequate time to review the discovery before proceeding with scheduled depositions. However, Plaintiff's counsel did not respond to the letter.

On August 3, 2015, Wells Fargo and Hunt Leibert's counsel discussed postponing the depositions of Plaintiff and his wife, Tonya Davis ("Mrs. Davis"), because neither defendant had received complete discovery responses. (Id. at ¶ 13.) On August 4, 2015, Plaintiff's counsel sent an email stating that he would not agree to postpone the depositions because his "clients have provided all documents in their possession and control." (Id. at ¶ 14.) Plaintiff's counsel also stated that Ms. Davis had "been very ill and time is of the essence to proceed with her testimony if [defendants] want[ed] it." (Id.)

On August 6, 2015, Hunt Leibert moved for a protective order to postpone the noticed depositions due to Plaintiff's discovery omissions. (D.E. 76.) On August 7, 2015, Wells Fargo filed a response, agreeing with Hunt Leibert that the depositions should be postponed because Wells Fargo also had also not received Plaintiff's full compliance with its written discovery requests, while also agreeing with Plaintiff that the court should decide the issue given Plaintiff's objection to the postponement, particularly in light of the rapidly approaching discovery deadline. (D.E. 77.)

Plaintiff filed his response on August 10, 2015, asserting: "Plaintiffs [sic] have made a good faith effort to comply and have responded to the interrogatories to the best of their knowledge and ability." (D.E. 80 at ¶ 18.) He further stated: "There is no requirement in the Federal Rules of Civil Procedure for a party to receive responses to discovery prior to and as a condition of attending a deposition." (Id. at ¶ 21.) Plaintiff's response further stated that he, his wife and their counsel had all rearranged their work schedules in order to comply with the deposition notices. (Id. at ¶ 14.) The Court denied Hunt Leibert's Motion for Protective Order.

(D.E. 81, 82.)  Although the Court agreed with the defendants that it was the "usual (and eminently logical) practice" that all discovery responses be provided before a deposition, it held that the depositions should proceed as scheduled due to the work schedule issue.  (Id.)

On August 12, 2015 and August 13, 2015, Defendants' counsels deposed Plaintiff and his wife, Mrs. Davis.  (First Bizar Aff. at ¶ 15.)  Plaintiff testified that he received emails containing relevant communications in spring and summer, 2010 -- thereby verifying his knowledge of the pendency of the state court foreclosure action while out at sea.  For example, Plaintiff testified: "My Wife e-mailed me while underway and said, you missed a court date . . . ."  (Id. at Exhibit I at 59:21.)  During her deposition the next day, Mrs. Davis testified that whenever she would receive a court notice or notice from Wells Fargo in the mail concerning the foreclosure action, she would convey it to her husband "[e]ither through an e-mail or through a phone call if he wasn't home or when he got home."  (Id. at Exhibit J at 138:8-9.)  Yet, no emails have been produced by Plaintiff.  (Id. at ¶ 19.)  During their depositions, Plaintiff and Mrs. Davis also denied receiving numerous court notices and correspondence from Wells Fargo which would show that he was on notice that the foreclosure judgment had been vacated, and that the action had been dismissed.  Despite Wells Fargo's Document Requests requesting production of all responsive emails, Plaintiff testified he "[d]id not do an e-mail search for anything that ever had to do with Wells Fargo."  (Id. at Exhibit I at 61:1-8.)[4]

On August 20, 2015, Plaintiff's counsel produced a printout of the contents of a CD of Plaintiff's Naval medical records, consisting of 214 pages.  (Id. at ¶ 16.)  On August 24, 2015, Plaintiff's counsel produced a 1-page copy of a loan statement dated August 17, 2015 concerning

---

[4] After obtaining as much testimony as possible given Plaintiff's lack of discovery compliance, Wells Fargo suspended the depositions of both Plaintiff and his wife, and reserved the right to seek the Court's permission to continue them if additional information or documentation came to light following Plaintiff's full compliance with Wells Fargo's written discovery requests.

Plaintiff's mortgage loan, and a 1-page retail installment contract dated November 16, 2010 for financing terms of a used car purchase.  (Id.)

On August 25, 2015, Wells Fargo's counsel sent Plaintiff's counsel another letter seeking to resolve the outstanding discovery issues.  (Id. at ¶ 17.)  The letter noted that Plaintiff still had not provided any response to Wells Fargo's July 24, 2015 discovery deficiency letter, which had requested compliance by August 10, 2015.  It stated that Wells Fargo's counsel was finalizing a motion to compel; in light of the Court's August 25, 2015 admonition to Plaintiff when granting Hunt Leibert's separate motion to compel, (D.E. 85 at 2 n.3), Wells Fargo afforded Plaintiff one last chance to abide by his discovery obligations before burdening the Court.  Finally, the letter stated that if Plaintiff failed to provide a satisfactory response before the end of that day, Wells Fargo would file a motion to compel noting his repeated failure to respond.  (First Bizar Aff. at ¶ 17.)  Wells Fargo's counsel received no response.  (Id. at ¶ 18.)

On September 3, 2015, during a break while conducting additional depositions, Wells Fargo's counsel again asked Plaintiff's counsel when he intended to respond to and comply with Wells Fargo's outstanding written discovery.  Plaintiff's counsel stated only that his clients were still searching for documents, and he had no further responses at that time.  (Id. at ¶ 20.)  Wells Fargo filed its Motion to Compel Discovery on September 8, 2015.  (D.E. 86.)  Discovery closed on September 22, 2015 without Plaintiff providing any further discovery.

On October 20, 2015, the Court issued an order granting Wells Fargo's Motion to Compel Discovery and ordering Plaintiff to comply on or before November 23, 2015.  (D.E. 90.)  Among other things, the Court's Oct. 20, 2015 Order required:

       (1) Plaintiff to provide a sworn verification to Wells Fargo's Interrogatories;

    (2) Plaintiff to fully respond to Wells Fargo's Interrogatory numbers 2, 4, 5, 7, and 13 through 17;

    (3) Plaintiff to provide a written response to Wells Fargo's Document Requests in accordance with Fed. R. Civ. P. 34(b)(2);

    (4) Plaintiff to provide supplemental responses to Wells Fargo's Document Request numbers 1 through 4, 11 through 16, 20, 24, and 25;

    (5) Plaintiff to provide a full explanation if he could no longer produce the requested documents in response to Wells Fargo's Document Request numbers 1 through 3, 11, 13 through 16, 20, 24, and 25;

    (6) Plaintiff and his wife to execute consents to accompany subpoenas to their Internet service providers to release their email records under 18 U.S.C. § 2702(b)(3) and Fed. R. Civ. P. 26(b)(2); and

    (7) Plaintiff to make his computers and smart phones available for a neutral forensic analyst to copy their hard drives and memory storage devices so that they may be examined for storage of relevant documents, and for tampering.

(D.E. 90.)  Plaintiff  failed to comply with nearly all of the enumerated items listed above as required by the Court's Oct. 20, 2015 Order.

      On November 30, 2015, Wells Fargo's counsel received a letter, dated November 20, 2015, from Plaintiff's counsel purportedly enclosing Plaintiff's supplemental production in response to the Court's Oct. 20, 2015 Order.  (Second Bizar Aff. at ¶ 6 & Ex. A.)  On December 11, 2015, Wells Fargo's counsel sent a letter to Plaintiff's counsel identifying numerous deficiencies in Plaintiff's supplemental production.  (Id. at ¶ 7 & Ex. B.)  The letter explained that Plaintiff's supplemental production had failed to provide any meaningful response to the

outstanding items enumerated in Wells Fargo's Motion to Compel, and that it fell woefully short of compliance with the Court's Oct. 20, 2015 Order.  (Id. at Ex. B.)  Rather, everything provided on Plaintiff's behalf had previously been produced, or pertained to the Court's separate order (D.E. 98) on co-defendant Hunt Leibert Jacobson's Supplemental Motion to Compel or for Sanctions (D.E. 92). (Second Bizar Aff. at Ex. B.)  The letter stated that Wells Fargo's counsel intended to file a motion for sanctions, and invited Plaintiff's counsel to discuss these issues in an effort to afford Plaintiff a further opportunity to abide by the Court's Oct. 20, 2015 Order before Wells Fargo filed the subject motion.  (Id.)

On December 14, 2015, Wells Fargo's counsel conferred with Plaintiff's counsel regarding the continuing deficiencies in Plaintiff's discovery responses.  (Id. at ¶ 8.)  During that conference, Plaintiff's counsel informed Wells Fargo's counsel that:

- Plaintiff did not search for or preserve the emails that Wells Fargo had requested in discovery at the outset of the case.  (Id.)  Rather, Plaintiff disposed of the computers that stored any responsive emails on their hard drives.  (Id.)

- Plaintiff and his wife did not execute the consent forms that are necessary for Wells Fargo to subpoena their Internet service provider to determine whether the responsive emails are or were available directly from this source as an alternative means to obtain this needed discovery.  (Id.)  Instead, Plaintiff's counsel asserted Plaintiff called his Internet service provider and its customer service representative told him that there are no records of the emails available.  (Id.)

- Plaintiff now asserts he was deployed from October, 2009 through April 10, 2010, and was "underway" from 6/22/10-6/24/10, 7/4/10-7/12/10, 8/6/10-8/13/10, 8/16/10-8/23/10, and 9/30/10-9/1/10.  (Id.)  Despite demand and these documents being responsive to both Wells Fargo's Document Requests and Interrogatories, the Plaintiff has not provided the source of this information or produced the documentation from which he reported these specific dates to his counsel.  (Id.)[5]

On January 4, 2016, Plaintiff's counsel served supplemental answers to Wells Fargo's interrogatories.  (Id. at ¶ 9 & Ex. C.)  Although Plaintiff's supplemental interrogatory answers

---

[5] Plaintiff's January 4, 2016 supplemental answer to Wells Fargo's Interrogatory no. 5 provided this information, along with a signed verification (see id. at Ex. C), but again failed to provide the source of this information or any supporting documentation.

included a signed verification and provided some additional factual information in response to

certain interrogatories (see id. at Ex. C), they were badly deficient as explained, infra.  In

addition, this written discovery response was not accompanied by a response to Wells Fargo's

document requests or production of any documents whatsoever (or identification of supporting

documents) as requested in the Interrogatories.  (Id.)  Wells Fargo's counsel has made

exhaustive attempts to confer with Plaintiff's counsel to discuss the discovery issues between

the parties in a good faith effort to eliminate or reduce this controversy, and to arrive at a

mutually satisfactory resolution, to no avail.

## II.    ARGUMENT

> **a.    Plaintiff's action against Wells Fargo should be dismissed as a sanction for his repeated discovery misconduct and abject failure to comply with the Court's Oct. 20, 2015 Order compelling discovery compliance.**

"Rule 37 provides a non-exclusive list of sanctions that may be imposed on a party for

failing to obey an order to provide or permit discovery." Martinelli v. Bridgeport Roman

Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998) (citing Werbungs Und Commerz

Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1027 (2d Cir. 1991)).  For example,

Fed. R. Civ. P. 37(b)(2)(A) provides in relevant part:

> If a party or a party's officer, director, or managing agent . . . fails
> to obey an order to provide or permit discovery, including an order
> under . . . 37(a), the court where the action is pending may issue
> further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the action,
> as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order
except an order to submit to a physical or mental examination.

The Court has "wide discretion in imposing sanctions under Rule 37." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted). Among the sanctions that a court is empowered to invoke is dismissal.  For example, a federal district court appropriately imposes the most severe sanction under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order.  S. New England Tel. Co. v. Glob. NAPs, Inc., 251 F.R.D. 82, 93 (D. Conn. 2008), aff'd, 624 F.3d 123 (2d Cir. 2010) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Id.

The Second Circuit has identified factors for determining whether dismissal of an action pursuant to Fed. R. Civ. P. 37 is appropriate, including:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)) (internal quotation marks and alteration omitted).

Dismissal of an action "pursuant to Rule 37 is a 'drastic remedy' that 'should only be imposed in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'"  S. New England Tel. Co., 251 F.R.D. at 90 (citing West, 167 F.3d at 779) (internal quotation and citations omitted).  Nevertheless, "[d]ismissal is appropriate if there is a showing of 'willfulness, bad faith, or fault on the part of the sanctioned party.'"  Id.  "A party may also

11

be found at 'fault' sufficient to justify dismissal of the case if they were 'grossly negligent' in following discovery orders." Id. (citing Penthouse Int'l, Ltd. v. Playboy Enters, Inc., 663 F.2d 371, 387 (2d Cir. 1981)).

Dismissal is warranted here.  Plaintiff has shown a complete disregard of his discovery obligations throughout the course of this action.  His misconduct started at the outset of the case when neither he nor his counsel undertook any efforts to preserve ESI, including requested responsive emails that are relevant to the pivotal issue in this case:  what Plaintiff knew and when and how we was informed about the status of the state court foreclosure action during his period of Navy service on a submarine in the spring and summer of 2010.  During the course of litigation, Plaintiff repeatedly disregarded his discovery obligations by failing to provide any, or adequate, responses to Wells Fargo's written discovery requests, by failing to respond to correspondence sent by Wells Fargo's counsel seeking compliance with his outstanding discovery obligations, and by making promises that were not kept regarding his plans for compliance with outstanding discovery obligations.  This forced Wells Fargo to file its Motion to Compel, thereby leading to the Court's Oct. 20, 2015 Order compelling Plaintiff to comply with his outstanding discovery obligations to Wells Fargo.  Yet, even when confronted with the Court's Oct. 20, 2015 Order, Plaintiff failed to produce a single new responsive document or timely serve supplemental written discovery responses, to comply with the Court's November 23, 2015 deadline.

The Court's Oct. 20, 2015 Order required Plaintiff to provide a written response to Wells Fargo's Document Requests, to provide supplemental responses to Wells Fargo's Document Request numbers 1 through 4, 11 through 16, 20, 24, and 25, and to provide a full explanation as to any reasons that Plaintiff can no longer produce the requested documents in response to Wells

Fargo's Document Request numbers 1 through 3, 11, 13 through 16, 20, 24, and 25.  Plaintiff has never provided any written response to Wells Fargo's document requests, and has never produced any additional responsive documents.

Plaintiff served supplemental interrogatory answers served on January 4, 2016 , which were late, inadequate and self-serving.  (See Second Bizar Aff. at Ex. C.)  The Court's Oct. 20, 2015 Order required Plaintiff to supplement and provide complete answers to Wells Fargo Interrogatory numbers 2, 4, 5, 7 and 13-17.  Plaintiff failed to identify or provide any documents responsive to Interrogatory numbers 2 and 4, despite being ordered to do so.  (See id. at 3, 4 (no responsive documents identified or produced).)  Interrogatory numbers 13 through 17 required Plaintiff to state the complete factual basis for his SCRA and other state law claims as alleged in the Amended Complaint.  (See id. at 5, 7, 10, 12 & 14.)  Plaintiff still did not do so.  Rather, he interposed further objections in response to these interrogatories (even though waived by his failure to oppose Wells Fargo's motion to compel, or overruled by the Court in its Oct. 20, 2015 Order) and merely referenced the factual allegations he pled in his Amended Complaint and the Court's discussion of those facts in its Nov. 7, 2014 Order on Defendants' motions to dismiss. (See id. at 5-16.)  Plaintiff failed to comply with the Court's Oct. 20, 2015 Order by serving a good faith answer to these Interrogatories.

With regard to the ESI, the Court's Oct. 20, 2015 Order required Plaintiff to search for and produce emails that Wells Fargo had requested in its Interrogatories and Document Requests, and to make his computers and smart phones available to a neutral forensic analyst so that they can be examined for responsive information,  The Order also required both Plaintiff and his wife to sign consent forms to accompany subpoenas to their Internet service provider to release any email records as an alternative source of this needed discovery.  (D.E. 90; granting

Wells Fargo's Motion to Compel, D.E. 86, in full.)  Plaintiff did not comply with these court-ordered obligations.

Wells Fargo served its discovery requests on Plaintiff on May 30, 2013, more than two and a half years ago.  Yet, Plaintiff never produced the requested emails.  During his deposition, Plaintiff testified that he did not even search for the emails requested in Wells Fargo's Interrogatories and Document Requests.  And Plaintiff's counsel informed Wells Fargo's counsel, following the Court's grant of Wells Fargo's motion to compel, that Plaintiff could not make the computer and smart phones he and his wife transmitted the emails on or through for a neutral forensic analysis and examination, as required by the Court's Oct. 20, 2015 Order, because they had disposed of them.   Plaintiff went past taking no efforts to preserve the responsive emails, to actively destroying them, thereby spoliating critical evidence that would have shown exactly what Plaintiff knew about the state court foreclosure proceedings while he was performing Naval service in the Spring and Summer of 2010 -- the central issue in this action.

Plaintiff and Mrs. Davis also refused to execute the consent forms required by the Court's Oct. 20, 2015 Order.  Without those signed forms, Wells Fargo could not subpoena Plaintiff's Internet service providers to determine whether the emails were still available through this alternative means.  Instead, Plaintiff's counsel informed Wells Fargo's counsel that Plaintiff called his Internet service provider, and was advised that there are no records of his emails available.  Not only is this response not compliant with the Court's Oct. 20, 2015 Order, it is not an adequate substitute for the discovery to which Wells Fargo is entitled under Rule 26 of the Federal Rules of Civil Procedure.

Plaintiff has now provided detailed date information of when he claims he was at home in Connecticut versus deployed at sea, but despite demand and court order Plaintiff has failed to produce any documentation verifying or even concerning this information.  Wells Fargo is thus left in the untenable position of having a list of dates when Plaintiff  asserts he was on deployment and out to sea, with those dates stretching back more than six years to 2009, without any documentation to test the accuracy of Plaintiff's asserttion, on summary judgment, or through cross-examination at trial.  The prejudice to Wells Fargo is palpable.

The Court's Oct. 20, 2015 order also required Plaintiff to provide a written response to Wells Fargo's Document Requests, to provide supplemental responses to Wells Fargo's Document Request numbers 1 through 4, 11 through 16, 20, 24, and 25, and to provide a full explanation as to any reasons that Plaintiff can no longer produce the requested documents in response to Wells Fargo's Document Request numbers 1 through 3, 11, 13 through 16, 20, 24, and 25.  Plaintiff still has not provided any written response to Wells Fargo's Document Requests as required by the Court's Oct. 20, 2015 Order, or produced any additional responsive documents.

Other important issues in this action concern Plaintiff's request for emotional distress and mental anguish damages, and when he and his family moved from the Property into military housing in Kittery, Maine.  Plaintiff, however, has not produced any documents in response to Document Request no. 13 concerning his emotional or mental state since January 1, 2006, or any documents in response to Document Request no. 20 which would establish, evidence or concern either his mental state, or the date of his family's move to Maine.

Wells Fargo has provided Plaintiff with numerous opportunities to provide appropriate responses to Wells Fargo's Interrogatories and Document Requests.  His abject noncompliance

with his discovery obligations, willful noncompliance with the Court's Oct. 20, 2015 Order, and

his spoliation of critical evidence severely prejudices Wells Fargo's ability to defend this action.

Plaintiff's non-responsiveness and failure to cooperate in discovery, destruction of evidence,

and failure to comply with the Court's Oct. 20, 2015 Order demonstrate his willfulness, bad

faith, fault or, at a minimum, his gross negligence in failing to comply with his Rule 26

discovery obligations and the Court's discovery orders.  These transgressions and the resulting

prejudice to Wells Fargo warrant the imposition of the sanction of dismissal.  See John B. Hull,

Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1177 (2d Cir. 1988) (upholding

imposition of dismissal sanction against defendant for failing to provide any meaningful

discovery concerning a core trial issue despite clear court orders, including two warnings

regarding failure to provide adequate discovery responses); see also S. New England Tel. Co.,

251 F.R.D. at 96 (granting default judgment against defendant for willfully violating the court's

discovery orders by failing to turn over general ledgers and other business records, lying to the

court about the inability to obtain documents from third parties, and destroying and withholding

documents that were within the scope of the discovery requests and orders despite the explicit

warning that failure to comply would result in a default judgment).

      **b. An adverse inference instruction should be imposed against Plaintiff as an alternative remedy to dismissal of the action.[6]**

            **i. Adverse inference instruction based upon Plaintiff's failure to produce relevant evidence.**

As an alternative remedy for Plaintiff's discovery misconduct if the Court declines to

dismiss the action, Wells Fargo requests that the Court impose as a sanction an adverse

---

[6] If the Court elects this remedy, the adverse inference instruction or instructions should be imposed during its consideration of Wells Fargo's pending summary judgment motion, which should be dispositive of that motion in Wells Fargo's favor.

inference instruction with respect to all evidence that Plaintiff has failed to produce per the Court's Oct. 20, 2015 Order.

A party seeking an adverse inference instruction based upon the failure to produce evidence must show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted).

The first requirement is clearly met here.  Wells Fargo served its discovery requests on Plaintiff on May 30, 2013, more than two and a half years ago.  Plaintiff had control of all relevant and discoverable evidence from the outset of the case, including the requested emails, but took no reasonable efforts to preserve the responsive ESI, and was subsequently ordered to produce it by the Court's Oct. 20, 2015 Order.

With regard to the second element, Plaintiff had a culpable state of mind.  Wells Fargo's counsel provided Plaintiff's counsel with numerous opportunities throughout the course of this action to provide adequate responses to the Interrogatories and Document Requests.  Plaintiff and his counsel were utterly non-responsive, forcing Wells Fargo to file its Motion to Compel. Following entry of the Court' Oct. 20, 2015 Order, Plaintiff knowingly failed to comply with the Order by not responding to Wells Fargo's Interrogatories and Document Requests by the November 23, 2015 deadline.  Most egregiously, Plaintiff did not preserve or produce the critical email evidence -- which would have shown exactly what he was told about the

foreclosure proceedings while he was performing Naval service in the spring and summer of
2010.  Rather, Plaintiff disposed of the computers that stored those emails on their hard drives.

      Finally, the missing evidence is clearly relevant to Wells Fargo's defenses such that a
reasonable trier of fact could find that it would support those defenses.  The party seeking an
adverse instruction need only establish that a reasonable trier of fact could infer that the
unavailable evidence would have been of the nature alleged by the party affected by its
destruction.  <u>Residential Funding Corp.</u>, 306 F.3d at 109.

      As discussed above, central issues in this action concern what Plaintiff was told about
the foreclosure proceedings while he was performing Naval service, the dates that he was
located in Connecticut as opposed to being deployed at sea, and when he moved to Maine.
Indeed, Plaintiff testified during his deposition that:  "My Wife e-mailed me while underway
and said, you missed a court date . . . ."  (D.E. 86-10 at 59:21.)  During his wife's deposition,
Mrs. Davis testified that whenever she received a court notice or notice from Wells Fargo in the
mail, she would convey it to Plaintiff "[e]ither through an e-mail or through a phone call if he
wasn't home or when he got home."  (D.E. 86-11 at 138:8-9.)  Another issue in this action
concerns Plaintiff's allegation of damages for emotional distress and mental anguish.  Here as
well, Plaintiff has not produced any documents requested in Wells Fargo's discovery requests in
direct violation of the Court's Oct. 20, 2015 Order.

      Plaintiff's willful failure to provide the responses and documents ordered by the Court
demonstrate that such information would have been adverse to his claims and helpful to Wells
Fargo's defenses.  Accordingly, the sanction of an adverse inference instruction should be
imposed with regard to all evidence that Plaintiff has failed to produce in non-compliance with

the Court's Oct. 20, 2015 Order, as an alternative sanction in the event the Court decides not to dismiss the case entirely as to Wells Fargo.

### ii. Adverse inference instruction based on Plaintiff's destruction of evidence.

Also, if the Court declines to dismiss the action, as an additional sanction for Plaintiff's spoliation misconduct Wells Fargo requests that the Court impose the sanction of an adverse inference instruction with regard to all evidence that Plaintiff spoliated by failing to preserve ESI and disposing of his computers and smart phones.

A party seeking an adverse inference instruction based on destruction of evidence must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107 (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107–12 (2d Cir. 2001)).

The first requirement test is, once again, met. Plaintiff clearly had control of his computers and smart phones and the evidence stored on them, including the requested emails, at the time this action was filed in 2012. Plaintiff filed his complaint on or about July 31, 2012, and knew or should have known that documents concerning his communications about, and knowledge of, the pending foreclosure action must be preserved. Wells Fargo served its discovery requests on May 30, 2013, more than two and a half years ago. Wells Fargo's discovery requests specifically requested email correspondence by and between Plaintiff and his family members concerning the allegations in his Complaint. Plaintiff unquestionably had an obligation to preserve ESI stored on his computers and smart phones, including emails.

With regard to the second element, Plaintiff had a culpable state of mind.  Plaintiff knew that his emails were the subject of discovery at least as early as May 30, 2013 when Wells Fargo served its discovery requests, if not earlier.  Yet, Plaintiff provided no documents concerning them, and he disposed of his computers and smart phones containing the emails that would have shown exactly what he and his wife discussed about the foreclosure proceedings while he was at sea in the Spring and Summer of 2010.

The third element of the adverse instruction test is likewise satisfied, as the missing email evidence is clearly relevant to Wells Fargo's defenses.  The central issue in this action concerns what and when Plaintiff was told about the state court foreclosure proceedings while he was performing Naval service in spring and summer, 2010.   Plaintiff's emails would have shown exactly what he and his wife discussed about the foreclosure proceedings.[7]

Plaintiff's discovery misconduct and spoliation of evidence leads to an inescapable conclusion:  the responsive emails were not preserved or produced, and Plaintiff disposed of his computers, because this evidence would have been harmful to his case. Accordingly, Wells Fargo is entitled to an adverse inference instruction sanction with respect to all evidence that Plaintiff has failed to produce, resulting from the disposal of his computers and smart phones and his otherwise failure to preserve ESI leading to its spoliation, if this Court elects not to dismiss the action altogether.

---

[7] Indeed, Plaintiff testified that: "My Wife e-mailed me while underway and said, you missed a court date. . . ."  (D.E. 86-10 at 59:21.)  At Plaintiff's wife's deposition, she testified that whenever she would receive a court notice or notice from Wells Fargo in the mail, she would convey it to Plaintiff "[e]ither through an e-mail or through a phone call if he wasn't home or when he got home."  (D.E. 86-11 at 138:8-9.)

### c.   Plaintiff should be ordered to pay Wells Fargo's reasonable attorney's fees.

Fed. R. Civ. P. 37(b)(2)(C) provides:

> Instead of or in addition to the orders above, the court must order
> the disobedient party, the attorney advising that party, or both to
> pay the reasonable expenses, including attorney's fees, caused by
> the failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust.

In accordance with this provision, Wells Fargo requests that the Court impose as an additional sanction that Plaintiff reimburse it for its reasonable expenses, including attorney's fees, caused by his destruction of evidence, his failure to timely respond to Wells Fargo's Interrogatories and Document Requests, and his failure to comply with the Court's Oct. 20, 2015 Order (D.E. 90) granting Wells Fargo's Motion to Compel (D.E. 86), including for the time spent in preparing Wells Fargo's motions to compel and for sanctions.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant Wells Fargo Bank, N.A. requests that the Court grant its Motion to for Discovery Sanctions and order the following relief:  (1) dismiss Plaintiff's action against Wells Fargo with prejudice; (2) in the alternative, impose adverse inference instructions as requested in this motion; (3) award Wells Fargo its reasonable expenses, including attorney's fees, incurred in preparing and filing this motion; and (d) award such further relief as the Court deems just and proper under the circumstances.

Dated:  February 11, 2016

Respectfully submitted,

DEFENDANT,
WELLS FARGO BANK, N.A.,

By its attorney,

*/s/ David M. Bizar*
David M. Bizar (ct20444)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Telephone: (617) 946-4874
Facsimile: (617) 790-5368
Email: dbizar@seyfarth.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing on all parties of record. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronics Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ David M. Bizar*
David M. Bizar