UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DAVIS,<br>    *Plaintiff*,<br>    *v.*<br>HUNT LEIBERT JACOBSON P.C.<br>And WELLS FARGO BANK, N.A.,<br>    *Defendants*. | Civil No. 3:12cv1102 (JBA)<br><br>June 10, 2016 |

**RULING ON DEFENDANT'S MOTION FOR SANCTIONS**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves [Doc. # 133] for discovery sanctions against Plaintiff James Davis pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) and (C), claiming that Plaintiff has failed to serve adequate and timely responses to Wells Fargo's interrogatories and requests for production, properly preserve evidence and engaged in misconduct in spoliating evidence, and adequately comply with this Court's October 20, 2015 discovery order [Doc. # 90]. Accordingly, Defendant asks this Court to (1) either dismiss Mr. Davis's action against it or to impose the sanction of an adverse inference instruction, and (2) order Plaintiff to pay Wells Fargo's reasonable expenses and attorney's fees. Oral argument was held on March 16, 2016. For the following reasons, Defendant's motion is granted in part and denied in part.

**I.**  **Background**

Plaintiff filed this case on July 31, 2012. Wells Fargo served its First Request for Production of Documents and First Set of Interrogatories on Plaintiff on May 30, 2015, and again on March 18, 2014, following a stay of the litigation. (*See* First Bizar Aff. [Doc. # 86-1] ¶¶ 3–4; Mar. 18, 2014 Email, Ex. A to First Bizar Aff. at 1) Having received no response, on May 19, 2014, Wells Fargo asked Plaintiff's counsel when it could expect a reply. (*See*

*id.* ¶ 5; May 19, 2014 Ltr., Ex. B to First Bizar Aff. at 1.) On June 13, 2014, Plaintiff's counsel notified Wells Fargo that while he had "already delivered to [it] the various documents in [his] possession and control that are relevant in connection with [his] Rule 26 obligations[,] [u]nderstanding [that] much of this was informal and in connection with settlement discussions, [he would] again provide [Wells Fargo] with these documents and a formal response to [its] production," as well as "responses to the outstanding interrogatories" "on or before July 3, 2014." (June 13, 2014 Ltr., Ex. D to First Bizar Aff. at 1.) On July 2, 2014, Plaintiff's counsel asked for "a couple more days." (July 2, 2014 Email, Ex. E to First Bizar Aff. at 1.) However, it was not until September 10, 2014 that Plaintiff's counsel sent any responsive information, and that information was limited to "a link to some photographs." (First Bizar Aff. ¶ 10.)

On February 23, 2015, the Court entered a revised scheduling order [Doc. # 69] requiring Plaintiff to "complete responses to Wells Fargo['s] outstanding written discovery" by March 4, 2015. On March 12, 2015, Plaintiff finally responded to Wells Fargo's interrogatories, but the responses were not verified, as required by Federal Rule of Civil Procedure 33(b). (First Bizar Aff. ¶ 11.) Plaintiff's March 2015 letter additionally enclosed 348 pages of documents, but it failed to indicate which documents were responsive to which document requests. (Mot. for Sanctions at 4; *see* First Bizar Aff. ¶ 11.) In August 2015, Plaintiff produced an additional 388 pages of documents. (First Bizar Aff. ¶ 16.)

On September 8, 2015, Wells Fargo, maintaining that Plaintiff's discovery responses were inadequate, filed a motion to compel [Doc. # 86], which was granted [Doc. # 90] by Magistrate Judge Margolis, absent opposition, by text order on October 20, 2015, with an

2

order that Plaintiff comply by November 23, 2015. The motion to compel sought a court order requiring Plaintiff to: (a) "provide an under oath verification of his responses" to interrogatories; (b) "correct the defects in his responses and fully respond to Wells Fargo's Interrogatories," specifically, with respect to numbers 2, 4, 5, 7, and 13–17[1]; (c) "provide a written response to Wells Fargo's First Request for Production of Documents," specifically with respect to request numbers 1–4, 11–16, 20, 24, and 25[2]; (d) "search for and produce"

---

[1] Interrogatory 2 sought the names, contact information, and relationship with Plaintiff of all persons with knowledge of facts relating to the allegation, as well as the facts known by such persons and how they obtained this knowledge. (*See* Mot. to Compel at 7.) Plaintiff's response included only names and contact information of ten individuals. (*See id.* at 7–8.) Interrogatory 4 sought a list of all of Plaintiff's current and former employers and their contact information, the dates of Plaintiff's employment, position, and duties with respect to each, any disciplinary action taken against him, the reasons why he left each job, and any documents relevant to his response. (*Id.* at 8.) Plaintiff's response did not include the addresses of each employer or the reasons why he left each position, and also failed to include any responsive documents. (*See id.* at 8–9.) Interrogatory 5 asked Plaintiff to describe his military service, including "the beginning and ending dates of such military service, each job title and rank and dates of same, and a description of military work responsibilities and location assignments." (*Id.* at 9.) Plaintiff did not include a description of his work responsibilities or location assignments in his response. (*See id.* at 8–9.) Interrogatory 7 asked for the names and relationship to Plaintiff of all individuals who have resided with him since January 2006. (*Id.* at 9.) Plaintiff did not answer this question. Interrogatories 13 through 17 asked Plaintiff to describe the factual basis for his claims. (*See id.* at 10–11.) In response to each question, Plaintiff referred Wells Fargo to his opposition to the motion to dismiss. (*See id.*)

[2] Request 1 asked for all documents "which relate to, bear upon, or provide evidence relating to the allegations in your Complaint." (*Id.* at 12.) Request 2 sought all "documents, photographs, tape recordings, transcripts, pictures, videotapes, or sound recordings . . . which show, depict, or contain communications involving any Defendant." (*Id.* at 13.) Requests 3 and 16 sought all documents relating to any claim for damages in Plaintiff's complaint. (*See id.* at 13, 15.) Request 4 asked for Plaintiff's federal and state tax returns, W-2 forms, and 1099 forms from 2006 to the present. (*Id.* at 13.) Request 11 sought all "correspondence, including emails sent by you . . . concerning any of your allegations

3

emails and any other documents relating to the allegations in Plaintiff's complaint, or, if Plaintiff "possessed or had custody or control of any such documents from or after the time that Wells Fargo requested but can no longer produce them," "provide a full explanation"; (e) "execute consents" from Plaintiff and his wife "to accompany subpoenas to their Internet service providers to release their emails"; and (f) "make his computers and smart phones available for a neutral forensic analyst to copy their hard drives and memory storages so that they may be examined for storage of relevant documents, and for tampering." (Mot. to Compel at 6–26.)

Wells Fargo received revised responses from Plaintiff to Hunt Leibert's requests for production on November 30, 2015 (though the document was dated November 20, 2015), which identified which documents that had already been produced were responsive to

against Defendants." (*Id.* at 14.) Request 12 sought Plaintiff's fee agreement with his attorney and any other documents relevant to his claim for attorneys' fees. (*Id.*) Request 13 asked for all "documents reflecting your emotional or mental state since January 1, 2016." (*Id.*) Request 14 sought all "personal notes, journals, diaries," or "other documents reflecting your thoughts, feelings, schedules, whereabouts, or any other information about you from 2006 to the present." (*Id.*) Request 15 asked for all documents "reflecting any attempt by you to mitigate your alleged damages in this case." (*Id.* at 15.) Request 20 sought all documents "relating to your military service from January 1, 2006 to present, including but not limited to documents evidencing your dates of deployment." (*Id.*) Requests 24 and 25 sought documents related to Plaintiff's claim that Wells Fargo refused to modify his loan and would not accept further loan payments and that Wells Fargo breached its own internal policies and procedures. (*Id.* at 16.)

Although Plaintiff did produce some responsive documents, he did not produce any emails, and he provided no explanations for his failure to produce documents with respect to all of the requests.

which questions.³ (*See* Second Bizar Aff. [Doc. # 134] ¶ 6; Suppl. Response Nov. 20, 2015, Ex. A to Second Bizar Aff.) Plaintiff's counsel avers that on November 4, 2015 and December 14, 2015 "counsel for Plaintiff and Defendant Wells Fargo conferred and Defendant's counsel agreed to waive a more formal response and accept the categorizations given in response to Hunt Leibert, which would essentially be identical to the information requested." (Stern Aff. ¶ 7c.) Although Wells Fargo's counsel denies, in his Reply, making "any such agreement," a sentence later he acknowledges that in fact he did agree "that Plaintiff did not have to identify which document requests any documents he produced responded to if that would reduce his compliance burden." (Reply [Doc. # 149] at 3.)

Plaintiff did not provide a sworn verification of his responses to the interrogatories until December 17, 2015, three weeks after it was due. (*See* Stern Aff. ¶ 7a; Ex. B to Stern Aff.) He did not supplement his responses to the interrogatories until January 4, 2015, more than a month and a half after it was due. (*See* Stern Aff. ¶ 7b; Ex. C to Stern Aff.) Finally, he did not provide explanations for his failure to produce documents requested until March 1, 2016, after Defendant had filed its motion for sanctions. (*See* Ex. E to Stern Aff.)

## II. Discussion

Federal Rule of Civil Procedure 37(b)(2)(A) enables a court in a pending action to impose sanctions on a party for failure to comply with a discovery order, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

³ For reasons that are not apparent to the Court, Plaintiff appears to have produced this identical document a second time on December 21, 2015. (*See* Ex. D to Stern Aff.)

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction . . . ." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

### A. Grounds for Sanctions

Defendant raises five primary grounds for an award of sanctions: (1) Plaintiff's failure to provide complete and timely responses to Wells Fargo's interrogatories (Mot. for Sanctions at 13); (2) Plaintiff's failure to provide written responses to Defendant's requests for production, including explanations for Plaintiff's inability to produce any document (*id.* at 15); (3) Plaintiff's failure to search for and produce emails relevant to his complaint; to make his computers and smart phones available to a neutral forensic analyst; and to sign consent forms to accompany subpoenas to his internet service provider (*id.* at 13–14); (4) Plaintiff's failure to produce any documentation concerning the dates he was deployed at sea (*id.* at 15); and (5) Plaintiff's failure to produce any documents concerning his mental

6

or emotional state since January 1, 2006, or showing the date of his family's move to Maine (*id.*). Each of these is discussed below.

### 1. Interrogatory Responses

Defendant first takes issue with Plaintiff's failure to identify documents relevant to Interrogatories 2 and 4 (seeking the names and contact information of all persons with knowledge of facts related to Plaintiff's claims and information about Plaintiff's employment history), as well as with his responses to Interrogatories 13–17 (seeking the factual basis for each of his claims).

Upon reviewing Plaintiff's responses, the Court finds them to be largely adequate, at least with respect to Interrogatories 13–17. However, Plaintiff's failure to identify documents relevant to Interrogatories 2 and 4 or explain his failure to do so, and his repeated disregard for Court-imposed deadlines for the production of discovery is concerning.

### 2. Written Responses to Document Requests

Defendant next contends that Plaintiff's failure to provide Court-ordered responses to document requests merits sanctions. However, Plaintiff's counsel has explained, and Defendant's counsel acknowledged, that the parties agreed that Plaintiff's responses to Hunt Leibert's document requests would suffice. In light of this agreement, Defendant can hardly now complain that Plaintiff failed to provide written responses to document requests.

### 3. Emails

Defendant additionally alleges that Plaintiff's failure to provide his computers and smart phones, consent for a subpoena of his internet service provider, and his emails

7

warrants sanctions. Plaintiff has, however, provided reasonable explanations for his failure to produce the computers, smart phones, and emails. As Plaintiff explained in the affidavit he submitted in response to this motion (and to some extent during his August 12, 2015 deposition, *see* Ex. I to First Bizar Aff.), all of the computers and smart phones used by him or his wife during the relevant time period were damaged and discarded before Plaintiff commenced this lawsuit; he did not keep printed copies of any emails; and all stored email traffic he received while deployed would have been destroyed before he got off the ship. (Davis Aff. [Doc. # 141] ¶¶ 15–23.)

What Plaintiff does not adequately explain is his failure to provide consent for his internet service provider to obtain his emails. His claims that he called AOL himself and that he has not been presented with a consent form to sign (*see id.* ¶25), while perhaps true, are not sufficient. It was up to Plaintiff's counsel to enable his client to comply with the Court order to by preparing for execution a consent form for Plaintiff and his wife; he cannot satisfy that obligation by having the Plaintiff call AOL himself.[4] Further, while Plaintiff's explanations for his failure to turn over his computers, emails, and cell phones (which he avers he explained to his lawyer on several occasions) are reasonable, his counsel's failure to provide those explanations in response to the relevant document requests by Defendant was not reasonable and is an abdication of Plaintiff's counsel's duties.

---

[4] The Court notes, however, that because Plaintiff has asserted that he contacted AOL on several occasions and was "told repeatedly in no uncertain terms that this information is not available and not recoverable" (Davis Aff. ¶ 24), it does not appear that Defendant suffered any prejudice from Plaintiff's (nonetheless inexcusable) failure to provide consent forms.

### 4. Dates of Deployment

Wells Fargo next contends that Plaintiff's failure to produce documentation verifying the dates he was deployed is grounds for the imposition of sanctions. While, once again, Defendant is undoubtedly correct that Plaintiff's counsel did not comply with his discovery duties when he failed to provide any timely explanation for his failure to produce the requested documents, Plaintiff's explanation for not producing the requested documentation is reasonable.[5] Plaintiff explained that he "was able to re-create the dates" of his deployment "and respond to the interrogatory by reviewing certain unrelated computerized naval records. These records are not available to the public and the information contained in them i[s] highly classified. The only information [he] used were to attempt to provide accuracy to the dates [he] was away from home . . . ." (Davis Aff. ¶ 12.) He added "I do not have possession of or authorization nor the ability to give access to this or any other written information to any third party." (*Id.* ¶ 13.) Notwithstanding Wells Fargo's arguments to the contrary (*see* Reply at 5–9), the Court finds this explanation persuasive.

### 5. Mental/Emotional State and Date of Family's Move

Finally, Defendant asserts that Plaintiff's failure to produce documents concerning his emotional state or establishing the date of his family's move to Maine merits sanctions. It is, however, not apparent what documents Defendant believes Plaintiff is withholding with respect to his mental or emotional state. He has provided his Naval medical records

---

[5] Further, Plaintiff's counsel advised Wells Fargo of this explanation in a December 15, 2015 email. (*See* Ex. B to Reply.)

and HIPPA authorizations for his medical treatment, and it is not clear what else he could offer. Further, with respect to the family's move to Maine, the Court is not persuaded that the document request Defendant highlights should have prompted Plaintiff to produce documents demonstrating his move date. Request 20, to which Defendant points, asks for all "documents reflecting your military service from January 1, 2006 to present, including but not limited to documents evidencing your dates of deployment." Why this would prompt Plaintiff to produce documents showing the date his family moved to Maine is not apparent.

### B. Sanctions Sought

Defendant urges the Court to dismiss this case as a sanction for Plaintiff's failure to comply with the Court's discovery orders, or in the alternative, to impose an adverse inference and attorneys' fees. The Court declines to dismiss the case or impose an adverse inference, but it does find an order of attorneys' fees to be appropriate, as explained below.

#### 1. Dismissal

"[D]ismissal 'is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" *Carter v. Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). In determining whether the imposition of dismissal is appropriate as a sanction, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

In this case, given the lack of prejudice Defendant has suffered due to Plaintiff's failure to timely comply with the Court's order, the reasonableness of most of Plaintiff's explanations for his failure to produce the requested documents, and the Court's belief that lesser sanctions would be effective, the Court does not find dismissal to be an appropriate sanction.

### 2. Adverse Inference

Defendant alternatively seeks an adverse inference instruction both for Plaintiff's failure to produce documents and for his alleged destruction of his computers and cell phones. "[W]here, as here, an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show:"

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp.*, 306 F.3d at 107 (internal quotation marks omitted). Similarly, "a party seeking an adverse inference instruction based on the destruction of evidence must establish:"

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* (internal quotation marks omitted).

As discussed above, the majority of non-compliance here consisted of a failure to abide by Court-imposed deadlines and a failure to affirmatively provide explanations for documents Plaintiff could not produce because they had been destroyed before this litigation was commenced or because Plaintiff did not possess them or legally could not produce them. With the exception of the consent forms, there is little Plaintiff did not produce that he could have and should have produced. As such, an adverse inference instruction is not warranted at this time.

Plaintiff's counsel is ordered to prepare an appropriate consent form for Plaintiff and his wife to sign so that Defendant may subpoena their emails from AOL. That consent form must be delivered to Defendant within **ten days** of this ruling. This order serves as a final warning to Plaintiff. Failure to comply by the <u>ordered deadline</u> **will result in the dismissal of this case**.

### 3. Attorneys' Fees and Costs

Finally, Defendant seeks an award of the attorneys' fees and costs expended in preparing this motion and its motion to compel. Rule 37(b)(2)(C) provides that a court "must" order a party, its attorney, or both, who fails to abide by discovery orders to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Because it appears that much of the responsibility for Plaintiff's failure to comply with the Court's discovery orders lies with his attorney, the Court orders Plaintiff's counsel to pay reasonable attorneys' fees and costs expended in litigating the motion to compel and those portions of the motion for sanctions on which Defendant prevailed, to the extent work on non-successful claims can be separated from work on successful claims.

**II. Conclusion**

For the foregoing reasons, Defendant Wells Fargo's Motion for Sanctions is GRANTED in part and DENIED in part. Plaintiff's counsel is ordered to prepare a consent form for Plaintiff and his wife to sign so that Defendant may subpoena their emails from AOL, and to deliver that consent form to Defendants within **ten days** of this ruling.

Defendant is directed to file an application for attorneys' fees and costs outlining the reasonable fees and costs expended in litigating the motion to compel and those portions of the motion for sanctions on which Defendant prevailed within **fourteen days** of this ruling. Plaintiff will then have **fourteen days** to respond.

IT IS SO ORDERED.

      /s/      .
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of June 2016.